

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIKA FLORES and SARAH GARNER, individuals, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>THE COMPUTER MERCHANT, LTD.,<br>Defendant. | Case No.:  25-cv-00038-AJB-DEB<br><br>**ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>**(Doc. No. 31)** |

Presently before the Court is Plaintiffs Erika Flores and Sarah Garner's ("Plaintiffs" or "Class Representatives") unopposed[1] motion for preliminary approval of class action settlement. (Doc. No. 31.) The Court finds this matter suitable for determination on the papers. *See* CivLR 7.1.d.1. For the reasons set forth below, the Court **GRANTS** Plaintiffs' motion.

///

---

[1]     Defendant The Computer Merchant, LTD. ("Defendant" or "TCM") failed to file a response to the instant motion. Reaching settlement and agreeing to the form of the proposed Preliminary Approval Order does not obviate Defendant of its responsibility under the Civil Local Rules to file a response. *See* CivLR 7.1.f.3.a (requiring either an opposition or notice of non-opposition to be filed). Nonetheless, the Court deems the instant motion unopposed. *See* CivLR 7.1.f.3.c.

## I.     BACKGROUND

### A.     Factual Background

This putative class action centers around Plaintiffs' allegations that Defendant, an IT staffing company, failed to properly secure and safeguard the personal identifiable information of former and current employees. (Doc. No. 31-1 at 6; Doc. No. 1, Complaint ("Compl."), at ¶¶ 1–3.) Plaintiffs allege that, due to Defendant's failure, a third party gained unauthorized access to Defendant's computer network July 2024 (the "Data Incident"), compromising the personal information of approximately 34,127 individuals, which then was posted on the "dark web."[2] (Doc. No. 31-1 at 6; Compl. ¶¶ 4–5, 7.) Plaintiffs allege claims for negligence, invasion of privacy, breach of implied contract, breach of fiduciary duty, breach of confidence, and violations of the California Unfair Competition Law, the California Customer Records Act, and the California Consumer Privacy Act ("CCPA"). (*See generally* Compl.)

### B.     Procedural Background

Plaintiffs filed the complaint on January 8, 2025 (*see* Compl.), which Defendant answered (Doc. No. 10). The parties attended two early neutral evaluation ("ENE") conferences with Magistrate Judge Daniel E. Butcher on August 12 and August 28, 2025. (Doc. Nos. 20; 23). At the end of the second ENE, Judge Butcher provided the parties with a mediator's proposal (Doc. No. 31-1 at 7), after which the parties reached a settlement in principle (*see id.*; *see also* Doc. No. 24). Over several months, the parties "worked cooperatively and diligently" to draft the Settlement and Release (Doc. No. 31-3, Settlement Agreement ("Settlement" or "Settlement Agreement")), which the parties and counsel executed in November 2025 (*Id.* At 32–35). Finally, on December 17, 2025, Plaintiffs filed the instant motion (Doc. No. 31), for which no opposition was filed or served on Plaintiffs' counsel (*see* Doc. No. 33).

---

[2]     Both Plaintiffs are former employees of Defendant whose personal information were taken in the Data Incident and posted on the dark web. (Compl. ¶¶ 15, 17.)

25-cv-00038-AJB-DEB

## II.    TERMS OF THE PROPOSED SETTLEMENT

The primary terms of the Settlement are provided below:

### A.    Settlement Benefits

Pursuant to the Settlement, Defendant will transfer $610,000 to an Escrow Account to set up the Settlement Fund, which will be used to pay the monetary benefits to the Settlement Class as detailed below, Settlement Administration Costs, Service Award payments to each named Plaintiff, and attorneys' fees and litigation costs. (Doc. No. 31-1 at 8.) Separate from the Settlement Fund, Defendant will pay for CyEx Financial Shield, which Plaintiffs describe as " a robust identity and financial monitoring service with $1 million of identity theft insurance, valued at $14.95 per month." (*Id.*)

All Settlement Class Members may submit a Claim Form electing from the following benefits: (1) compensation for Extraordinary Out-of-Pocket Losses up to a total of $3,000 per Settlement Class Member; (2) compensation for Out-of-Pocket Losses up to a total of $500 per Settlement Class Member or an Alternative Cash Payment, estimated to be $40 per Claimant; (3) compensation at a rate of $20 per hour for up to five hours of Lost Time spent monitoring accounts or otherwise dealing with issues related to the Data Incident; and (4) for California Settlement Class Members, a CCPA Cash Payment, estimated to be $75. (Doc. No. 31-1 at 8–9; Settlement ¶ 69.) All Class Members will be provided with one year of CyEx Financial Shield without needing to submit a Claim Form, the enrollment codes for which will be provided in the individualized Notice to each Class Member. (Doc. No. 31-1 at 9; Settlement ¶ 70.)

If the total amount of Valid Claims for Extraordinary Out-of-Pocket Losses, Out-of-Pocket Losses, Lost Time, Alternative Cash Payments, and CCPA Cash Payments submitted by the Claim Form Deadline exceeds the amount of money available in the Settlement Fund, the amount of each valid Claim will be reduced proportionally. (Doc. No. 31-1 at 10; Settlement ¶ 71.) To the extent any funds remain in the Settlement Fund from uncashed checks ninety days after the Settlement Administrator completes the process for stopping payment on any checks that remain uncashed, all remaining funds will be

distributed to a *cy pres* recipient to be approved by the Court. (Settlement ¶ 103.)

To benefit from the Settlement, Settlement Class Members must complete and submit a Claim Form to the Settlement Administrator, postmarked or submitted electronically in accordance with the requirements for electronic submission of a Claim Form, on or before the Claim Form Deadline, which is fifteen days before the Final Approval Hearing. (Doc. No. 31-1 at 8; Settlement ¶ 17.)

**B.    Settlement Notice and Administration**

The parties request that Simpluris, "an experienced and reputable national class action administrator," be appointed Settlement Administrator, to be paid out of the Settlement Fund. (Doc. No. 31-1 at 12.)

No later than fourteen days after Preliminary Approval, Defendant will provide the Class List to Class Counsel and the Settlement Administrator. (Settlement ¶ 80.) Within thirty days of Preliminary Approval, Defendant will transfer $100,000 into the Escrow Account to pay the Settlement Administrator Costs and the Settlement Administrator will commence the Notice Program. (*Id.* ¶¶ 65, 81.)

The Settlement Administrator will notify Settlement Class Members by email, for those of whom email addresses are available. (Doc. No. 31-1 at 10; *see also* Settlement ¶ 81.) If Defendant does not have record of a Settlement Class Member's email address or if the Email Notice bounces, the Settlement Administrator will mail Postcard Notice via U.S. Mail to that Settlement Class Member's mailing addresses, to the extent known or determinable by database search. (Doc. No. 31-1 at 10; *see also* Settlement ¶¶ 87.) Notice will also be published on the Settlement Website no later than one day prior to implementing the Notice Program. (Doc. No. 31-1 at 10; *see also* Settlement ¶ 83.) The Notice Program will be completed no later than forty-five days before the original date set for the Final Approval Hearing. (*Id.* ¶ 88.)

In addition to executing the Notice Plan, the Settlement Administrator will administer and make determinations regarding claim forms, process settlement payments, make distributions, and provide other services necessary to implement the Settlement.

(Doc. No. 31-1 at 12; *see also* Settlement ¶¶ 76–79.)

Plaintiffs estimate the Settlement Administration Costs to be $30,069.00. (Doc. No. 31-1 at 8.)

### C.    Objections and Opt-Out Procedure

Both the Email Notice and Postcard Notice will direct the Settlement Class to the Long Form Notice for the opt-out and objection procedures. (Settlement ¶¶ 84–85.) Anytime during the Opt-Out Period, which ends thirty days before the Final Approval Hearing, individuals in the Class may opt out by mailing to the Settlement Administrator a request to opt-out that includes their name, address, telephone number, email address, statement requesting to be excluded, and a personal signature. (*Id.* ¶¶ 44, 84.)

Objections may be submitted on the Settlement Website or mailed to the Settlement Administrator who will distribute them to counsel. (*Id.* ¶ 85.) The parties state that to be considered by the Court, the objection must be submitted no later than ten days before the Final Approval Hearing and include the objector's full name, mailing address, telephone number, email address, grounds for objection, legal support, number of times the objector has objected in a class action settlement with the preceding five years, identity of counsel for the objector, the number of times objector's counsel has objected in a class action settlement within the preceding five years, any agreements related to the objection, a list of all persons the objector will call to testify at the Final Approval Hearing, and the objector's personal signature. (*Id.* ¶¶ 43, 86.)

### D.    Attorneys' Fees, Costs, and Incentive Awards

In reaching the settlement, the parties did not discuss attorneys' fees, costs, or expenses. (Doc. No. 31-1 at 7; Declaration of Ben Travis ("Travis Decl."), at ¶ 6.) The Settlement provides for Class Counsel seeking up to 33.33% in attorneys' fees, plus reimbursement of costs, and service awards for each named Plaintiff of an amount not to exceed $2,500. (Settlement ¶¶ 100–01.) However, the Settlement is not contingent upon approval of these requests. (*Id.* ¶ 102.)

In the instant motion, Plaintiffs represent that Class Counsel will seek a service

25-cv-00038-AJB-DEB

award of $2,500 for each named Plaintiff, reimbursement of litigation costs and expenses in an undetermined amount, and 25% of the Settlement Fund for attorneys' fees. (Doc. No. 31-1 at 11.)

### E.    Releases

In exchange for the benefits described above, Plaintiffs and Class Members will "be forever barred from instituting, maintaining, or prosecuting, any and all liabilities, rights, claims, actions, causes of action, demands, damages, costs, attorneys' fees, losses and remedies, whether known or unknown, asserted or unasserted, existing or potential, suspected or unsuspected, liquidated or unliquidated, legal, statutory, or equitable, based on contract, tort or any other theory, whether on behalf of themselves or others, that result from, arise out of, are based upon, or relate to (1) the Data Incident; or (2) any of the alleged violations of laws or regulations cited in the Complaint." (Settlement ¶ 104.) Plaintiffs Erika Flores and Sarah Garner are subject to an additional release that expressly waives Section 1542 of the California Civil Code. (*Id.* ¶¶107.)

## III.    LEGAL STANDARD

A class action may only be settled with court approval. Fed. R. Civ. P. 23(e). "[I]n the context of a case in which the parties reach a settlement agreement prior to class certification, courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, 895 F.3d 597, 606 (9th Cir. 2018) (quoting *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003)); *see also Saucillo v. Peck*, 25 F.4th 1118, 1130 (9th Cir. 2022) (quoting *Roes, 1–2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1048 (9th Cir. 2019) ("[W]here the parties negotiate a settlement agreement before the class has been certified, settlement approval requires a higher standard of fairness and a more probing inquiry than may normally be required under Rule 23(e).") (internal punctuation omitted).

## IV.    CONDITIONAL CLASS CERTIFICATION

Before granting preliminary approval of settlement agreement in a putative class action, the Court must first determine whether the proposed class can be certified. *See*

25-cv-00038-AJB-DEB

*Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 620–21 (1997). "To obtain class certification, a class plaintiff has the burden of showing that the requirements of Rule 23(a) are met and that the class is maintainable pursuant to Rule 23(b)." *Narouz v. Charter Commc'ns, LLC*, 591 F.3d 1261, 1266 (9th Cir. 2010) (citing *Amchem*, 521 U.S. at 613–14). "When, as here, the parties have entered into a settlement agreement before the district court certifies the class, reviewing courts 'must pay undiluted, even heightened, attention to class certification requirements.'" *Staton*, 327 F.3d at 952 (quoting *Amchem*, 521 U.S. at 620).

### A.    Proposed Settlement Classes

Plaintiffs seek provisional certification of the putative Class under Federal Rule of Civil Procedure 23(b)(3). The proposed settlement classes are defined as:

- "<u>Settlement Class</u>": "[A]ll persons in the United States whose Private Information was potentially compromised as a result of the Data Incident and who were sent notice of the Data Incident."[3] (*Id.* ¶ 59.)

- "<u>California Settlement Subclass</u>": "[T]hose individuals who are California Settlement Class Members and are eligible to receive a CCPA Cash Payment under the Settlement." (*Id.* ¶ 12.)

"If subclasses are required because of conflicts between the various class members and the inability of either class counsel or class representatives to adequately represent the subclass, 'each subclass must independently meet the requirements of Rule 23 for the maintenance of a class action.'" *Aldapa v. Fowler Packing Co., Inc.*, 323 F.R.D. 316, 326 (E.D. Cal. 2018) (quoting *Betts v. Reliable Collection Agency, Ltd.*, 659 F.2d 1000, 1005 (9th Cir. 1981)). However, where a subclass is created as a "procedural innovation[] to

---

[3]    "'Private Information' means Settlement Class Members' sensitive information that may have been exposed in the Data Incident, which may include names, Social Security numbers, dates of birth, financial information, and health-related information." (Settlement ¶ 50.) "'Data Incident' means the alleged incident that is the subject of the Complaint in which unauthorized third parties purportedly gained access to Settlement Class Members' Private Information." (*Id.* ¶ 25.)

facilitate management of the class action" pursuant to Rule 23(d), then "it is unnecessary to evaluate it under Rule 23(c)(4) for commonality, numerosity, typicality, and adequacy of representation." *Am. Timber & Trading Co. v. First Nat. Bank of Oregon*, 690 F.2d 781, 786–87, n.5 (9th Cir. 1982).

Here, the creation of a subclass is not due to conflicts or inadequate representation. Rather, the subclass here appears to be crafted to aid in damage calculations because the CCPA provides for statutory damages (*see* Doc. No. 31-1 at 21). *See Am. Timber & Trading Co.*, 690 F.2d at 786. As such, the Court views the subclass as a request for permissive subclassing to facilitate management rather than compulsory to cure conflicts. *See* 3 NEWBERG AND RUBENSTEIN ON CLASS ACTIONS § 7:29 (6th ed. 2024).

## B.    Rule 23(a) Factors

Pursuant to Rule 23(a), a representative party may sue on behalf of all members of a class only if:

> (1)    the class is so numerous that joinder of all members is impracticable;
> (2)    there are questions of law or fact common to the class;
> (3)    the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4)    the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). "The Rule's four requirements—numerosity, commonality, typicality, and adequate representation—'effectively limit the class claims to those fairly encompassed by the named plaintiff's claims.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011) (*Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156 (1982)).

### 1.    Numerosity

First, the numerosity requirement is satisfied where "joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "[I]mpracticability does not mean impossibility, but only the difficulty or inconvenience of joining all members of the class." *Harris v. Palm Springs Alpine Ests., Inc.*, 329 F.2d 909, 913–14 (9th Cir. 1964) (citation omitted). "Although the Supreme Court has held that 'the numerosity requirement imposes no

absolute limitations,' courts generally find this requirement satisfied when a class includes at least forty members." *Pena v. Taylor Farms Pac., Inc.,* 305 F.R.D. 197, 213 (E.D. Cal. 2015) (first quoting *Gen. Tel. Co. of Nw. v. E.E.O.C.*, 446 U.S. 318, 330 (1980), then citing *Rannis v. Recchia*, 380 Fed. App'x 646, 651 (9th Cir. 2010)) (cleaned up).

Here, "Defendant estimates that there are approximately 34,127 individuals in the Settlement Class." (Doc. No. 31-1 at 14; Settlement ¶ 59.) The Court conditionally finds the numerosity requirement has been met.

### 2.    Commonality

Second, there must be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'" *Dukes*, 564 U.S. at 349–50 (quoting *Falcon*, 457 U.S. at 148). "What matters to class certification is not the raising of common 'questions'—even in droves—but rather, the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* at 350 (citation omitted) (emphasis in original).

The extent of Plaintiffs' explanation of commonality is, in whole: "[h]ere, the Settlement Class involve the same questions of law and fact. This includes whether Defendant was negligent by its alleged failure to properly secure and safeguard Class members' private information." (Doc. No. 31-1 at 14.) However, turning to the Complaint, Plaintiffs allege a number of common questions, including whether the Class's personal information was accessed and/or viewed by one or more unauthorized persons in the Data Incident, when and how Defendant should have learned and actually learned of the Data Incident, whether Defendant's response to the Data Incident was adequate, whether Defendant owed a duty to the Class to exercise due care in collecting, storing, safeguarding and/or obtaining the Class's personal information, and whether Defendant knew or should have known that it did not employ reasonable measures to keep the Class's personal information secure and to prevent loss or misuse of that personal information. (Compl. ¶ 68.)

25-cv-00038-AJB-DEB

District courts throughout this circuit have found that commonality is met when, as here, the proposed class of plaintiffs asserts that a defendant's cybersecurity and data storage policies and procedures were inadequate and resulted in a specific data breach. *See, e.g.*, *In re Anthem, Inc. Data Breach Litig.* ("*In re Anthem*"), 327 F.R.D. 299, 308 (N.D. Cal. 2018) ("All of Plaintiffs' claims are premised on and dependent on the notion that Anthem violated the law by failing to adequately secure the personal information in its data warehouse."); *In re LinkedIn User Priv. Litig.* ("*In re LinkedIn*"), 309 F.R.D. 573, 584 (N.D. Cal. 2015) (finding commonality met where the plaintiff alleged LinkedIn "made the same security representations to each class member . . . and had the same security deficiencies"); *Bowdle v. King's Seafood Co., LLC*, No. SACV2101784CJCJDEX, 2022 WL 19235264, at *3 (C.D. Cal. Oct. 19, 2022) ("Because the data breach and the adequacy of Defendant's security environment are common causes of Plaintiff's and the Class Members' alleged injuries, Plaintiff's allegations give rise to common questions of law and fact."); *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 16-MD-02752-LHK, 2020 WL 4212811, at *3 (N.D. Cal. July 22, 2020), *aff'd,* No. 20-16633, 2022 WL 2304236 (9th Cir. June 27, 2022); *Sankar v. Cal. Northstate Univ., LLC*, No. 2:24-CV-00473-DAD-JDP, 2025 WL 3539089, at *5–*6 (E.D. Cal. Dec. 10, 2025)

Although the instant motion provides very minimal analysis, considering the common questions of fact and law alleged in both the motion and the Complaint, the Court finds Plaintiffs have conditionally met the commonality requirement.

### 3. Typicality

Third, the claims or defenses of the class representative must be "typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "[U]nder the rule's permissive standards, representative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical." *Staton*, 327 F.3d at 957 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)); *see also Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) ("The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct

which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.") (citation omitted). "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Hanon*, 976 F.2d at 508.

Here, Plaintiffs' claims are typical of the claims of the absent Class Members because they arose from the same alleged conduct of Defendant, namely failure to properly secure and safeguard the personal identifiable information of former and current employees. (*See* Compl. ¶¶ 1–3; *see also* Doc. No. 31-1 at 15 ("Here, Plaintiffs' claims stem from Defendant's uniform practices.").) Plaintiffs and the other Class Members suffered the same type of injury as a result of this alleged conduct: the unauthorized disclosure of their personal information leaving the putative Class "in imminent, immediate, and continuing increased risk of harm from identity theft and fraud[.]" (Compl. ¶¶ 4–5, 7, 56.) Plaintiffs' claims are co-extensive with those of absent Class Members. (*See id.* ¶¶ 14–17.) Plaintiffs have therefore conditionally satisfied the typicality prong.

### 4.   Adequate Representation

Finally, Rule 23(a) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Serious conflicts of interest can impair adequate representation by the named plaintiffs, yet leave absent class members bound to the final judgment, thereby violating due process." *In re Volkswagen*, 895 F.3d at 607 (quoting *Hanlon*, 150 F.3d at 1020). "To determine whether the representation meets this standard, we ask two questions: (1) Do the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Staton*, 327 F.3d at 957. "Adequacy of representation also depends on the qualifications of counsel." *Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1007 (9th Cir. 2018). Specifically, "[t]he named representative's attorney must be qualified, experienced, and generally capable to conduct the litigation." *Id.* (cleaned up).

///

25-cv-00038-AJB-DEB

Plaintiffs contend that the adequacy of representation requirement is met here because both Plaintiffs and their counsel (1) do not have any conflicts of interest with the absent Settlement Class Members and (2) have vigorously prosecuted the action on behalf of the Settlement Class. (Doc. No. 31-1 at 15; *see also* Travis Decl. ¶ 23.) Based on these assertions, the Court is preliminarily satisfied that Plaintiffs' interests align with those of the proposed class and that Plaintiffs and their counsel have and will continue to vigorously prosecute the action on behalf of the class.

Additionally, although the instant motion does not itself address the adequacy of representation, the supporting declarations detail the qualifications of counsel. (Travis Decl. ¶¶ 14–22; Doc. No. 31-8, Declaration of Joshua Swigart ("Swigart Decl.").) Travis attests, *inter alia*, that (1) he has extensive experience in civil litigation, concentrating on complex class actions in consumer fraud, privacy, and wage-and-hour litigation, both in federal and state court; (2) he has served as class counsel in several settled class actions which provided millions of dollars in benefits to settlement classes; and (3) he is currently serving as counsel in several privacy putative class actions. (Travis Decl. ¶¶ 15, 17–19.) Additionally, Swigart is "well experienced in class actions and data breach litigations," as he practices "exclusively in the area of consumer rights litigation," with extensive experience in privacy related and data breach litigation. (Swigart Decl. ¶¶ 3, 5–6.) Based on these representations, the Court is preliminarily satisfied that Plaintiffs' counsel has no conflict of interest, is experienced, and will continue to vigorously prosecute the action on behalf of the putative class.

On record currently before the Court, the adequacy of representation requirement is conditionally satisfied.

### 5. Conclusion

Accordingly, the Court finds Plaintiffs have sufficiently demonstrated each of the four Rule 23(a) prerequisites to attain *preliminary* approval; however, Plaintiffs must provide more fulsome analysis of these factors in a motion for final approval.

///

12

25-cv-00038-AJB-DEB

### C.   Rule 23(b) Factors

"In addition to satisfying Rule 23(a)'s prerequisites, parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3). *Amchem*, 521 U.S. at 614. Relevant here, pursuant to Rule 23(b)(3), "[a] class action may be maintained if Rule 23(a) is satisfied and if . . . the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

### 1.   Predominance

"The predominance inquiry asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 664 (9th Cir. 2022) (quoting *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016)). "When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Tyson Foods, Inc.*, 577 U.S. at 453 (citation omitted).

Plaintiffs argue that, because "all Settlement Class Members' information was allegedly disclosed due to the same Data Incident, resolving that central issue is suitable to address on a class-wide basis; thus, common questions predominate." (Doc. No. 31-1 at 16.)

As discussed *supra*, the many issues are common to all putative Class Members. Specifically, Plaintiffs allege all Class Members' personal information was subject to Defendant's uniform cybersecurity policies and procedures and exposed in the Data Incident. As such, whether Defendant's alleged conduct violated Plaintiffs' rights is capable of class-wide resolution. *See, e.g.*, *In re Anthem*, 327 F.R.D. at 312 (finding that "whether Anthem properly secured the stolen personal information" was "the precise type

of predominant question that makes class-wide adjudication worthwhile"); *In re LinkedIn*, 309 F.R.D. at 585 (finding predominancy met because, *inter alia*, "whether LinkedIn failed to protect its users' PII with industry-standard protocols and technologies" could "be resolved for all members of the proposed class in a single adjudication" and was "the central focus of th[e] class action").

Considering both the individual and common questions of fact and law at issue here, the Court finds the predominance requirement is conditionally met.

### 2.    Superiority

In determining whether "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy," courts consider (1) the interest of class members individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (3) the desirability of concentrating the litigation of the claims in this particular forum; and (4) the manageability of the action as a class. Fed. R. Civ. P. 23(b)(3); *see also Zinser v. Accufix Rsch. Inst., Inc.*, 253 F.3d 1180, 1190 (9th Cir.), *as amended on denial of reh'g*, 273 F.3d 1266 (9th Cir. 2001).

Plaintiffs argue that proceeding as a class action is superior because "counsel for Plaintiffs are not aware of any other litigation arising out of the Data Incident pending in other forums" and "courts routinely find that the interests of settlement class members in data breach cases are aligned with certification of a settlement class, where an individual's potential recovery of alleged damages is low." (Doc. No. 31-1 at 16–17.)

First, considering the 34,127 putative Class Members whose claims, based on the record before the Court, would be for relatively modest damages which would make pursuing the claim individually economically infeasible. *See Zinser*, 253 F.3d at 1190 ("Where damages suffered by each putative class member are not large, this [first] factor weighs in favor of certifying a class action."); *see also In re Anthem*, 327 F.R.D. at 316 ("Because individual damages [incurred by a data security breach] pale in comparison to the costs of litigation, this factor points toward certification."); *Lopez v. NLP, LLC*, No.

2:24-CV-06403 CV (SKX), 2025 WL 4041932, at *7 (C.D. Cal. Dec. 4, 2025) ("For the first factor, since this is a data breach case where individual recovery is likely to be much lower than the costs of litigating 'complex technical issues' that could require 'substantial expert testimony,' it is unlikely that any individual class member would bear the risks and costs of litigating a separate action against Defendants."). Second, neither party identifies, nor is the Court independently aware of, any other pending litigation regarding the same controversy. This factor weighs in favor of certification. Third, Plaintiff Flores was employed by Defendant in this district, Defendant employes numerous individuals in this district, including Plaintiff Flores (Compl. ¶ 13); however, Defendant itself is a Massachusetts, who provides IT staffing services to companies across the United States (*id.* ¶¶ 18–20). As such, this factor weighs neither in favor of nor against certification. Finally, manageability need not be considered when considering certification in context of settlement. *See Amchem*, 521 U.S. at 620,

Balancing the factors set forth in Rule 23(b)(3), the Court finds the superiority requirement is conditionally met.

### D. Conclusion

Because Plaintiffs have met each of the four requirements of Rule 23(a) and at least one of the requirements of Rule 23(b), the Court certifies the Class for settlement purposes. The Court appoints Plaintiffs Erika Flores and Sarah Garner as Class Representatives and Swigart Law Group, APC, and Ben Travis Law, APC, as Class Counsel.

## V. PRELIMINARY APPROVAL OF CLASS SETTLEMENT

Next, the Court must make a preliminary determination regarding whether the proposed settlement and notice are "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(1), (2). "Under this standard, district courts can neither rubberstamp the settlement nor unduly meddle in the parties' affairs." *In re Cal. Pizza Kitchen Data Breach Litig.* ("*In re CPK*"), 129 F.4th 667, 674 (9th Cir. 2025).

Traditionally, courts in this circuit assess the fairness, reasonableness, and adequacy of a proposed Rule 23 class settlement by balancing the following factors:

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement.

*Kim v. Allison*, 8 F.4th 1170, 1178 (9th Cir. 2021). "The district court's approval order must show not only that 'it has explored [these] factors comprehensively,' but also that the settlement is 'not[] the product of collusion among the negotiating parties.'" *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011) (quoting *In re Mego Fin. Corp. Sec. Litig.* ("*In re Mego*"), 213 F.3d 454, 458 (9th Cir. 2000), *as amended* (June 19, 2000)).

In 2018, Rule 23(e)(2) was amended to require courts to consider whether:

> (A)  the class representatives and class counsel have adequately represented the class;
> (B)  the proposal was negotiated at arm's length;
> (C)  the relief provided for the class is adequate, taking into account:
>   (i)   the costs, risks, and delay of trial and appeal;
>   (ii)  the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>   (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>   (iv)  any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

## A.    Rule 23(e)(2) Factors

The Court turns first to the Rule 23(e)(2) factors.

### 1.    Adequacy of Relief

To determine the adequacy of the relief this Settlement provides Class Members, the Court will consider the amount of recovery in relation to the strength of Plaintiffs' case, the risks and expenses likely engendered by continued litigation, the requested attorneys'

fees, and the effectiveness of the proposed distribution method. *See* Fed. R. Civ. P. 23(e)(2)(C).

### i.      Amount of Recovery

"To evaluate the adequacy of the settlement amount, courts primarily consider plaintiffs' expected recovery against the value of the settlement offer." *In re Stable Rd. Acquisition Corp.*, No. 2:21-CV-5744-JFW(SHKx), 2024 WL 3643393, at *8 (C.D. Cal. Apr. 23, 2024). However, "[i]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair." *In re Mego*, 213 F.3d at 459 (quoting *Officers for Just. v. Civ. Serv. Comm'n*, 688 F.2d 615, 628 (9th Cir. 1982)); *see also In re CPK*, 129 F.4th at 678 ("[C]ourts do not have a duty to maximize settlement value for class members.").

Plaintiffs argue that, considering both monetary and non-monetary benefits to the Class, the Settlement represents "significant recovery and potentially more than [the Class] would be able to recover at trial." (Doc. No. 31-1 at 20.) The average monetary recovery per Class Members is estimated to be $17.87.[4] (*Id.*) As context, Plaintiffs assert that "[e]stimating the likely maximum recovery if Plaintiffs successfully certified a class and prevailed on the merits is challenging, especially given that—to counsel's knowledge—no data breach class actions have reached a verdict." (*Id.*) Additionally, Plaintiffs state that there has been no evidence that any Class Member has suffered a loss as a result of the Data Incident; however, the Settlement provides for reimbursement of demonstrable losses, if any were to exist. (*Id.*) Finally, Plaintiffs point to the added value of providing the Class with a one-year subscription to CyEx Financial Shield. (*Id.*)

Courts in this circuit have found that, because data-breach litigation is a relatively new field, *see In re Anthem*, 327 F.R.D. at 317, it is difficult at this time to quantify possible

---

[4]      It is unclear why the estimate provided in the instant motion is $17.87, but the Notice includes an estimate of $40 for the Alternative Cash Payment and $75 for the CCPA Cash Payment. The parties must be prepared to address the discrepancy at the Final Approval Hearing.

25-cv-00038-AJB-DEB

exposure and thus maximum potential recovery at trial. *See, e.g.*, *Hashemi v. Bosley, Inc.*, No. CV 21-946 PSG (RAOX), 2022 WL 2155117, at *7 (C.D. Cal. Feb. 22, 2022) ("[I]t is difficult to estimate Plaintiffs' expected recovery were this case to proceed to trial given the relative dearth of precedent and exemplar cases that have proceeded to trial."); *Bowdle*, 2022 WL 19235264, at *7 (same).

However, in considering adequacy of pre-trial settlements, courts have routinely approved modest settlements that are similar to or less than the recovery here. *See, e.g.*, *Lopez*, 2025 WL 4041932, at *12 (finding that the plaintiffs' case law survey demonstrating a range of per class member recovery of $1.31 to $55.46 "comports with the Court's observations about other data breach settlements") (collecting cases); *Sankar*, 2025 WL 3539089, at *11 ("The court observes that $20.62, the amount that the average putative Class Member can expect to receive under the proposed settlement, is significant as compared to other privacy class settlements.") (collecting cases); *Carter v. Vivendi Ticketing US LLC*, No. SACV2201981CJCDFMX, 2023 WL 8153712, at *5 (C.D. Cal. Oct. 30, 2023) ("[O]ther courts have approved settlements in privacy and security cases when each class member received just a few dollars or less.") (collecting cases).

Comparing the monetary and non-monetary benefits here to those in other data breach litigation settlements, the amount of recovery weighs in favor of a preliminary finding of adequacy.

> ii. **Strength of Plaintiffs' Case; Risk, Expense, Complexity, and Likely Duration; and Risk of Maintaining Class Action Status**

When assessing "the costs, risks, and delay of trial and appeal[,]" Fed. R. Civ. P. 23(e)(2)(C)(i), courts in the Ninth Circuit evaluate "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; [and] the risk of maintaining class action status throughout the trial[.]" *Hanlon*, 150 F.3d at 1026. However, "the settlement or fairness hearing is not to be turned into a trial or rehearsal for trial on the merits . . . for it is the very uncertainty of outcome in litigation and avoidance of wasteful

25-cv-00038-AJB-DEB

and expensive litigation that induce consensual settlements." *Officers for Just.*, 688 F.2d at 628. "In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004) (citation omitted).

Plaintiffs argue that "[l]itigating data breach cases—even through class certification—is costly and time consuming, particularly given the likelihood of protracted and highly technical fact and expert discovery." (Doc. No. 31-1 at 18.) Specifically, the parties anticipate that, had the case not settled, there would have been extensive motion practice, including Rule 12(c) challenges to the sufficiency of Plaintiffs' allegations regarding economic injury. (*Id.* at 18–19.) Additionally, resolving whether Defendant's security protocols were reasonable would require "complex, expensive, and unpredictable technical discovery and expert evidence regarding Defendant's cybersecurity measures." (*Id.* at 19.)

"Article III standing can be an uphill battle for data-breach plaintiffs, who must allege a 'concrete harm,' not just an 'asserted risk of future harm.'" *In re CPK*, 129 F.4th at 678 (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 437 (2021)). Considering that neither named Plaintiff alleges harm beyond personal information being posted to the dark web, Plaintiffs' argument regarding the risk of maintaining the action is well-taken. *See id.* ("Here, the class's standing rested on questionable footing—there is no evidence that any CPK employee's compromised data was misused[.]"). Additionally, because Defendant "continues to deny each of the claims and contentions alleged in the Complaint" and "that a class could or should be certified in the Action for litigation purposes," (Settlement ¶¶ 6, 16, 106, 116–20), pursuing litigation on the merits would likely require complex discovery, extensive motion practice, and carry a significant degree of risk.

Balancing the uncertainty and delay of continued litigation against the immediacy and certainty of settlement, these factors weigh in favor of a preliminary finding of adequacy. *See, e.g.*, *In re Anthem*, 327 F.R.D. at 318 ("Taken together, these circumstances

25-cv-00038-AJB-DEB

suggest that further litigation would have been costly and uncertain and would have detrimentally delayed any potential relief for the Class. By contrast, the Settlement provides the Class with timely, certain, and meaningful recovery."); *Carlin v. DairyAmerica, Inc.*, 380 F. Supp. 3d 998, 1011 (E.D. Cal. 2019) ("It has been held proper to take the bird in hand instead of a prospective flock in the bush.").

### iii.    Proposed Award of Attorneys' Fees and Litigation Costs

Pursuant to the Settlement, Class Counsel will request attorneys' fees up to 25% of the Settlement Fund and reimburse litigation costs and expenses incurred. (Doc. No. 31-1 at 11–12.)

As part of evaluating the settlement terms, the court must also consider "the terms of any proposed award of attorney's fees" to determine "whether the attorneys' fees arrangement shortchanges the class." *Briseño v. Henderson*, 998 F.3d 1014, 1024 (9th Cir. 2021) (quoting in part Fed. R. Civ. Pro. 23(e)(2)(C)(iii)). Courts "must balance the proposed award of attorney's fees vis-à-vis the relief provided for the class in determining whether the settlement is adequate for class members." *Id.* (internal quotation marks omitted).

"In a common fund case, such as this, the district court has the discretion to choose between either the lodestar or the percentage-of-fund methods when calculating fees." *Stanger v. China Elec. Motor, Inc.*, 812 F.3d 734, 738 (9th Cir. 2016). "Under the percentage-of-fund method, the district court may award plaintiffs' attorneys a percentage of the common fund, so long as that percentage represents a reasonable fee." *Id.* (citing *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000)). "The benchmark percentage is 25%, but, similar to the lodestar, the benchmark percentage 'can be adjusted upward or downward, depending on the circumstances.'" *In re Apple Inc. Device Performance Litig.*, 50 F.4th 769, 784 (9th Cir. 2022) (quoting *Kim*, 8 F.4th at 1181); *cf. Stanger*, 812 F.3d at 738 ("Because there is a strong presumption that the lodestar amount represents a reasonable fee, adjustments to the lodestar are the exception rather than the rule.").

///

The instant motion fails to provide any information regarding whether 25% of the Settlement Fund is warranted for Class Counsel's fees beyond the percentage being presumptively reasonable. Additionally, the motion fails to provide any information regarding the litigation expenses, including the amount currently incurred, an estimate of what will be sought, or a maximum they will not exceed. Class Counsel is cautioned that the requested attorneys' fees and litigation costs will be closely scrutinized as part of any future Rule 23(h) motion. *See McKinney-Drobnis v. Oreshack*, 16 F.4th 594, 610 (9th Cir. 2021) ("[T]he district court has a duty to scrutinize the agreement for signs that the fees requested by counsel are unreasonably high."). To that end, in their subsequent motion, Class Counsel will be expected to provide:

(1)    detailed explanation for the requested attorney fees addressing all the Ninth Circuit's applicable factors;

(2)    documentation, such as billing records for all attorneys on the matter, to justify the requested attorneys' fees;

(3)    declarations addressing reasonableness of each attorney's hourly rate considering prevailing rates for counsel of comparable experience, skill, and reputation in the Southern District of California; and

(4)    itemized records reflecting the requested litigation costs.

Due to the dearth of information provided at this time, and considering that Plaintiffs and Class Counsel are to address the Court's concerns at the final approval stage, this factor weighs neither in favor nor against a finding of adequacy.

### iv.    Effectiveness of the Proposed Distribution Method

"[T]he goal of any distribution method is to get as much of the available damages remedy to class members as possible and in as simple and expedient a manner as possible." 4 NEWBERG ON CLASS ACTIONS § 13:53 (6th ed. 2024).

Here, the claims process is straightforward. The Class will receive notice explaining they may be entitled to a Settlement Member Benefit and detailing how to submit a Claim Form. (Settlement ¶ 89.) Claim Forms will be attached to the notice and may be submitted

online through the Settlement Website or through U.S. Mail by sending them to the Settlement Administrator at the address on the Claim Form. (*Id.* ¶ 90.)

To claim compensation for Extraordinary Out-of-Pocket Losses and Out-of-Pocket Losses, Claimants must submit documentation of the actual losses incurred, such as receipts demonstrating how much was lost or spent. (Doc. No. 31-7 at 3, 5–6.) To receive compensation for Lost Time, Claimants must briefly explain what tasks were conducted during the claimed time. (*Id.* at 3–4, 6.) To claim the Alternative Cash Payment and the CCPA Cash Payment, Claimants need only check the appropriate box. (*Id.* at 6–7.) Finally, Claimants are provided payment options of PayPal, Venmo, Zelle, Virtual Prepaid Card, or Physical Check, from which they are prompted to select one. (*Id.* at 7.) The Settlement Administrator will review each Claim Form to determine whether it is a Valid Claim. (*See* Settlement ¶¶ 91–92.)

For the nonmonetary benefit of identity monitoring, a CyEx Financial Shield enrollment code will be provided to each Settlement Class Member, regardless of Claim Form submission, in the Email Notice and Postcard Notice. (Doc. No. 31-1 at 21; Settlement ¶¶ 70, 93(c).) Enrollments will become active after final approval of the Settlement. (Doc. No. 31-1 at 21; *see also* Doc. Nos. 31-4 at 3; 31-5 at 2.)

Payments will be sent "as soon as practicable" after Defendant transfers the remaining Settlement Fund balance into the Escrow Account, which Defendant is to do no later than 30 days after the Effective Date. (Settlement ¶¶ 65, 93(b).) Settlement Checks will expire if not negotiated within ninety days of their date of issue. (*Id.* ¶ 94.)

Distribution, both in method and timeline, is reasonable and relatively efficient. Thus, this factor weighs in favor of a preliminary finding of adequacy.

### v.   Conclusion

Considering the amount of recovery, the certainty that settlement brings, and the distribution method's efficiency, the Court finds the relief to be adequate, despite concerns regarding the lack of information provided about attorneys' fees, costs, and service awards. As such, the Rule 23(e)(2)(C) factor preliminarily weighs in favor of approval.

### 2.    Adequate Representation

Second, the court considers whether "the class representatives and class counsel have adequately represented the class[.]" Fed. R. Civ. P. 23(e)(2)(A). When analyzing the adequacy of the representation, the court must address two questions: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1031 (9th Cir. 2012) (citation omitted). "As to the latter question, the relevant inquiry is whether the plaintiffs maintain a sufficient interest in, and nexus with, the class so as to ensure vigorous representation." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 943 (9th Cir. 2015) (citation and internal punctation omitted).

As to the first question, based on the instant motion and declarations of Class Counsel attached thereto, it does not appear that Plaintiffs or Class Counsel have any interests that conflict with the Class, beyond Plaintiffs' intent to seek service awards for the representation of the Class. (Doc. No. 31-1 at 11, 21.)

Regarding the second question, as discussed *supra* § IV.B.4, Class Counsel have extensive experience in class-action and employment litigation, including wage-and-hour class actions, which indicates that they are well suited to vigorously represent Plaintiffs and the Class. Additionally, there are no differences between Plaintiffs' claims and that of the Class, which indicates that Plaintiffs have sufficiently similar interest to vigorously represent the Class. However, looking beyond the claims, Plaintiffs' intent to seek a service award provides an interest in this Settlement that is distinct from that of the Class.

Considering that the Settlement is not conditioned on Plaintiffs' receipt a service award (*see* Settlement ¶ 102), that the Settlement leaves the exact amount to the Court's discretion (*see id.* ¶¶ 56, 100, 102), and that the Court is not aware of an ex-ante agreement between Plaintiff and Class Counsel regarding such award, the Court finds that Plaintiffs and Class Counsel have preliminarily satisfied the adequacy requirement of Rule 23(e)(2)(A). *See In re Online DVD-Rental*, 779 F.3d at 943.

25-cv-00038-AJB-DEB

### 3.    Signs of Collusion

In reviewing the next Rule 23(e) factor, the Court must examine the Settlement for indicia of collusion that would undermine a prima facie arm's length negotiation. Signs of collusion may include (a) disproportionate distributions of settlement funds to counsel; (b) negotiation of attorneys' fees separate from the class fund ("clear sailing provision"); or (c) an arrangement for funds not awarded to revert to the defendants ("reverter provision"). *See Staton*, 327 F.3d at 965. If multiple indicia of implicit collusion are present, the district court has a heightened obligation to assure that fees are not unreasonably high. *Id.*

Here, the parties participated in two ENEs before both sides accepted Judge Butcher's mediator's proposal. (Doc. No. 31-1 at 17; *see also* Doc. Nos. 20; 23; 24.) The fact that the Settlement was reached with the assistance of experienced mediators suggests that the settlement is fair and reasonable. *See Bellinghausen v. Tractor Supply Co.*, 303 F.R.D. 611, 620 (N.D. Cal. 2014) (noting that discovery and the use of a mediator "support the conclusion that the Plaintiff was appropriately informed in negotiating a settlement"); *Cabrales v. Bae Sys. San Diego Ship Repair, Inc.*, No. 21-CV-02122-AJB-DDL, 2024 WL 4994339, at *12 (S.D. Cal. Dec. 5, 2024) ("The use of a mediator on two separate occasions to negotiate settlement and the exchange of discovery beforehand both support a conclusion that Plaintiffs were appropriately informed in negotiating a settlement, and that the settlement was not the result of collusion or bad faith by the parties or counsel."); *Lopez v. Velocity Transp. LLC*, No. 22-CV-1414-RSH-KSC, 2024 WL 4957565, at *6 (S.D. Cal. Dec. 3, 2024) (finding a settlement to be the product of "serious, informed, non-collusive negotiations" where it was reached through acceptance of a mediator's proposal after full-day negotiations and extensive discovery); *Lusk v. Five Guys Enters. LLC*, No. 117CV00762AWIEPG, 2022 WL 4791923, at *8 (E.D. Cal. Sept. 30, 2022) ("The Parties did not reach an agreement directly at the conclusion of mediation, but they eventually reached a settlement after informed, arm's-length negotiations and with the help of the mediator's proposal to resolve the matter. In light of the above, the Court finds that this factor weighs in favor of preliminary approval.").

Also, the parties did not identify any side agreements made in connection with the settlement. *See* Fed. R. Civ. P. 23(e)(3). There is no clear sailing provision or reverter provision. (*See* Doc. No. 31-1 at 17; Travis Decl. ¶ 10; Settlement ¶ 62.) Finally, in reaching the settlement, the parties did not discuss attorneys' fees, costs, or expenses. (Doc. No. 31-1 at 7; Travis Decl. ¶ 6 ("The Parties never discussed attorneys' fees and costs associated with a settlement until after they reached agreement on the amount of the settlement.").) The Court preliminarily finds this factor weighs in favor of approval.

### 4. Equitable Treatment of Class Members

As to the fourth and final Rule 23(e)(2) factor, the Court examines whether "the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). This inquiry considers both (i) equity across sub-categories, or segments, of the class, and (ii) equity between class representatives and unnamed class members.

As discussed *supra*, the Settlement Agreement treats the named Plaintiffs differently from other Class Members by providing them with incentive awards in addition to their settlement share. *See supra* § V.A.2. However, the named Plaintiffs are also subject to an additional release as compared to the rest of the Class.

Considering calculation of monetary benefits, the Settlement expressly contemplates providing Class Members with a share based either (1) on the amount of losses actually incurred or (2) absent documentation of actual losses, a *pro rata* calculation. Although the motion is absent discussion of this difference, the Court is preliminarily satisfied that the difference in potential recovery takes appropriate account of Class Members' individual circumstances. In the motion for final approval, the parties must explicitly address and justify the equity of the different share options.

### B. Additional Ninth Circuit Factors

Although the amended Rule 23(e)(2) factors were not intended to replace the factors developed by circuits, *see* Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment, the instant motion only addresses the Rule 23(e)(2) factors. Regardless, the

25-cv-00038-AJB-DEB

Court now turns to analyze the remaining factors traditionally considered by this circuit.[5] *See McKinney-Drobnis*, 16 F.4th at 609 n.4 ("The amended Rule 23(e) did not 'displace' this court's previous articulation of the relevant factors, and it is still appropriate for district courts to consider these factors in their holistic assessment of settlement fairness.").

### 1.    Experience and Views of Counsel

"Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *In re Pac. Enter. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995). As such, "[g]reat weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation." *Nat'l Rural Telecomm. Coop.*, 221 F.R.D. at 529 (citation and internal quotation marks omitted).

Here, "[b]oth Parties are represented by experienced counsel and their mutual desire to adopt the terms of the proposed settlement, while not conclusive, is entitled to great deal of weight." *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1174 (S.D. Cal. 2007); *see also In re LinkedIn*, 309 F.R.D. at 588 ("Class counsel has extensive experience prosecuting and settling class actions, including in the field of consumer privacy."). In addition to being familiar with the present dispute, Class Counsel has significant expertise in class action litigation, including data security. (*See* Travis Decl. ¶¶ 15, 17–19; Swigart Decl. ¶¶ 3, 5–6.) This factor weighs in favor of approval.

### 2.    Reaction of Class Members

"It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) (quoting *Nat'l Rural Telecomm. Coop.*, 221 F.R.D. at 529).

At this preliminary approval stage, Class Members have yet to receive notice of

---

[5]    The parties' motion for final approval must address all factors considered by the Ninth Circuit, including those that precede the amended Rule 23(e)(2) factors.

settlement. Accordingly, the Court will revisit this factor with the subsequent motion for final approval of settlement.

### 3.    Presence of a Government Actor

There is no government actor a party to the instant action; however, the Class Action Fairness Act ("CAFA"), pursuant to which the Complaint was brought, requires that, "[n]ot later than 10 days after a proposed settlement of a class action is filed in court, each defendant that is participating in the proposed settlement shall serve upon the appropriate State official of each State in which a class member resides and the appropriate Federal official, a notice of the proposed settlement[.]" 28 U.S.C. § 1715(b). "Although CAFA does not create an affirmative duty for either state or federal officials to take any action in response to a class action settlement, CAFA presumes that, once put on notice, state or federal officials will raise any concerns that they may have during the normal course of the class action settlement procedures." *In re LinkedIn*, 309 F.R.D. at 588–89.

Here, because the parties agreed that notice of the proposed settlement would be provided to appropriate state and federal officials within 10 days for filing the instant motion (Settlement ¶ 78(a)), the Court will revisit this factor with the subsequent motion for final approval of settlement.

### C.    Cy Pres Recipient

"[C]y *pres* doctrine allows a court to distribute unclaimed or non-distributable portions of a class action settlement fund to the 'next best' class of beneficiaries." *Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012) (quoting *Nachshin v. AOL, LLC*, 663 F.3d 1034, 1036 (9th Cir. 2011)). "[A] district court should not approve a *cy pres* distribution unless it bears a substantial nexus to the interests of the class members" meaning that it "must account for the nature of the plaintiffs' lawsuit, the objectives of the underlying statutes, and the interests of the silent class members." *Id.* at 821(cleaned up).

The Settlement Agreement contemplates the possibility of identifying a *cy pres* recipient through subsequent Court involvement, if necessary. Specifically, "[i]f there is any balance remaining in the Settlement Fund 90 days after the Settlement Administrator

25-cv-00038-AJB-DEB

completes the process for stopping payment on any checks that remain uncashed, the Parties will return to the Court seeking direction as to the disposition of these funds, including the selection of a *cy pres* recipient, which shall be a 501(c)(3) selected by the Parties (subject to Court approval)." (Settlement ¶ 73.)

However, the Court sees no reason for identification and approval of the *cy pres* recipient to be deferred. Accordingly, in their motion for final approval, Plaintiffs are directed to specify the proposed *cy pres* recipient and explain why the specified recipient is appropriate.

### D.    Service Awards for Named Plaintiffs

Service awards, also called incentive awards, are designed to "compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009); *but see Staton*, 327 F.3d at 975–78 (discussing conflicting interests for named plaintiff receiving incentive award). Although "[i]ncentive awards are fairly typical in class action cases," they are discretionary, *id.* at 958, and "district courts must be vigilant in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class representatives," *Radcliffe v. Experian Info. Sols. Inc.*, 715 F.3d 1157, 1164 (9th Cir. 2013). "[E]xcess incentive awards may put the class representative in a conflict with the class and present a 'considerable danger of individuals bringing cases as class actions principally to increase their own leverage to attain a remunerative settlement for themselves and then trading on that leverage in the course of negotiations.'" *Rodriguez*, 563 F.3d at 960 (quoting *Staton*, 327 F.3d at 977–78).

In deciding whether to approve an incentive award, courts consider factors including "the number of named plaintiffs receiving incentive payments, the proportion of the payments relative to the settlement amount, and the size of each payment." *In re Online DVD-Rental*, 779 F.3d at 947 (quoting *Staton*, 327 F.3d at 977); *see also Ridgeway v. Wal-Mart Stores Inc.*, 269 F. Supp. 3d 975, 1002 (N.D. Cal. 2017) (listing factors including risk

25-cv-00038-AJB-DEB

to the representative, notoriety and personal difficulties encountered, amount of time and effort spent, duration of litigation, and personal benefit).

Here, the Settlement proposes a $2,500 incentive award for each of the two named Plaintiffs in this action. (Settlement ¶ 100.) In support of these awards, Plaintiffs state that such awards are "fairly typical in class action cases" and are "appropriate here" considering the time the Class Representatives have spent "developing the case and conferring with counsel." (Doc. No. 31-1 at 21.) Specifically, "Plaintiffs have actively participated in the prosecution of this action by reviewing and approving the original Complaint; communicating regularly with their counsel; attending the initial ENE and remaining on standby for the continued ENE; weighing in on the proposed settlement; . . . generally staying informed about the progress of the litigation and acting in the interests of the proposed class[; and] put[ting] their names and reputations on the line for the sake of the Settlement Class." (*Id.* at 11.) Plaintiffs provide no declaration from either named Plaintiff specifying the hours expended on tasks each Plaintiff completed in furtherance of this litigation or detailing any specific risk each faced by prosecuting this action. Additionally, the instant motion provides no case law supporting the reasonableness of the $5,000 cumulative incentive awards in relation to Settlement Fund and Settlement Class of this size, despite concluding that the individual award amount of $2,500 "is consistent with those approved in other consumer class action settlements." (*Id.*)

Although Plaintiffs have provided little basis warranting approval of the incentive awards at this time, the Court does not find this a reason to deny preliminary approval considering that the Settlement leaves the exact amount to the Court's discretion. (*See* Settlement ¶¶ 56, 100, 102.) In the parties' future motion for final approval and any corresponding motion for award of fees that includes the service award, the parties must:

(1) address the legal and factual basis supporting the specific amount requested in the service award that is individualized to each named Plaintiff; and

(2) provide a declaration from each named Plaintiff that, *inter alia*, estimates the hours expended on tasks completed in furtherance of this litigation and detail any specific

risk they faced by prosecuting this action.

### E.    Settlement Administration

To ultimately approve a class action settlement, a district court must ensure class members were notified of the proceedings, had the opportunity to opt out or, for those who remain in the settlement, object to any of the settlement's terms, and were provided the chance to appear at fairness hearing. Fed. R. Civ. P. 23(c)(2), (e)(1), (e)(5).

To effectuate these procedures, the parties have agreed to retain Simpluris. (Settlement ¶ 76.) The Court approves and appoints Simpluris to administer notice and the Settlement.

Additionally, the Settlement Agreement states the Settlement Administrator will be paid for *all* costs of administration out of the Settlement Fund (*Id.* ¶ 66), which Plaintiffs currently estimate at $30,069 (Doc. No. 31-1 at 8). Although concerned that the Settlement neither sets a maximum of administration costs nor limits costs to those reasonably incurred, the Court finds the estimated $30,069.00 Settlement Administrator costs preliminarily reasonable, subject to review of an itemized bill of costs actually incurred and costs to still be incurred at the Final Approval Hearing. *See, e.g.*, *Hod v. Medtronic MiniMed, Inc.*, No. 2:23-CV-07154-JLS-PVC, 2025 WL 2934516, at *6 (C.D. Cal. Sept. 18, 2025) (finding $24,968 in administration costs reasonable where notice was provided to 54,475 class members in a data breach suit); *Giroux v. Essex Prop. Tr., Inc.*, No. 16-CV-01722-HSG, 2019 WL 1207301, at *6 (N.D. Cal. Mar. 14, 2019), *amended*, No. 16-CV-01722-HSG, 2019 WL 2106587 (N.D. Cal. May 14, 2019) (finding $22,500 in administration costs reasonable where notice was provided to 2,500 of the defendant's current and former employees in a data breach suit).

### F.    Form and Method of Proposed Notice

Rules 23(c)(2)(B) and (e)(1) generally require that a Rule 23(b)(3) settlement class should receive notice in a reasonable manner, and that the notice be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *see also Amchem*, 521

25-cv-00038-AJB-DEB

U.S. at 617. Regular mail, electronic mail, and other appropriate means should all be considered. *See* Fed. R. Civ. P. 23(c)(2)(B). "Notice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (quoting *Mendoza v. Tucson Sch. Dist. No. 1*, 623 F.2d 1338, 1352 (9th Cir. 1980)). Additionally, as settlement was reached pre-certification, the notice must also comply with Rule 23(c)(2). *See* Fed. R. Civ. P. 23(c)(B) (setting forth seven requirements for notice of a class certified pursuant to Rule 23(b)(3)).

Here, Plaintiffs propose that notice to the Class be sent by email initially for those of whom Defendant maintained email addresses. (Settlement ¶ 81.) For Class Members for whom Defendant did not have an email address and for Class Members for whom the initial Email Notice bounced, the Settlement Administrator will disseminate Postcard Notice via U.S. Mail to the mailing addresses provided by Defendant. (*Id.*) To implement this procedure, Defendant will provide the Class List, including names, email addresses, and postal addresses of all members of the Class, to Class Counsel and the Settlement Administrator no later than fourteen days after Preliminary Approval. (*Id.* ¶¶ 20, 80.) For those individuals for whom both Email Notice and Postcard Notice was undeliverable, the Settlement Administrator will run a database search and re-mail notice no later than forty-five days before the Final Approval Hearing. (*Id.* ¶ 87.)

Having reviewed the proposed Class Notice Packet, the Court concludes the Notice complies with Federal Rule of Civil Procedure 23. Accordingly, the Court approves the Notice in plan, form, and content. Efficacy of notice will be revisited at the Final Approval Hearing considering the final number of delivered notices as compared to the number of undeliverable notices and considering the number of Claim Forms successfully submitted.

## VI.   CONCLUSION

For the reasons stated above, the Court enters the following orders:

1.    **Conditional Class Certification**: The Court **GRANTS** Plaintiffs' request for conditional certification of the Settlement Classes and **DEFINES** the Settlement Classes

as set forth *supra* § IV.A. The Court **APPOINTS** Plaintiffs Erika Flores and Sarah Garner as Class Representatives and **APPOINTS** Swigart Law Group, APC, and Ben Travis Law, APC, as Class Counsel.

2.    **Preliminary Approval of Settlement**: The Court finds, on a preliminary basis, that the proposed Class Settlement appears to be fair, adequate, and within the range of reasonableness. Accordingly, the Court **GRANTS** Plaintiffs' motion for preliminary approval of class settlement (Doc No. 31.)

3.    **Notice of Settlement**: The Court finds the proposed Notice (Doc. Nos. 31-4; 31-5; 31-6) to be consistent with the requirements of Rule 23 and due process to provide the best practicable notice under the circumstances. Accordingly, the Court **APPROVES** the proposed Notice.

4.    **Settlement Administration**: The Court **APPOINTS** Simpluris as the Settlement Administrator to supervise and administer the notice procedure in connection with the Settlement as well as the processing of claims set forth in the Settlement Agreement. The Court **APPROVES** the implementation schedule of the Notice Process (*see* Doc. No. 31-1 at 26), except where dates are otherwise set by numbers 5 and 6 below.

5.    **Briefing Schedule**: The motion for final approval of class action settlement and motion for attorneys' fees and costs must be filed and served on all parties no later than **May 18, 2026**. Responses—including either an opposition or a notice of non-opposition by Defendant (only with regard to any motion not filed jointly) and any Objections by Settlement Class Members—must be filed and served on counsel for all parties no later than **May 26, 2025**. Any reply by Plaintiffs must be filed and served on counsel for all parties no later than **June 2, 2026**. Plaintiffs' motions must also comply with the following:

The motion for final approval MUST:

- ADDRESS the concerns raised by the Court in the instant Order;
- ADDRESS when the CAFA Notice was served and upon whom it was served and INCLUDE AND ADDRESS any objections or responses received from the government officials;

- ADDRESS the actual efficacy of the Notice Program by, *inter alia*, identifying the number of Class Members who received Email Notice, Postcard Notice in the first instance, Postcard Notice after a databased search, and the number who never received notice successfully; and

- INCLUDE AND ADDRESS any Objections or responses received as of the filing date.

In support of the fees, expenses, and incentive award motion, Class Counsel MUST:

- ADDRESS the concerns raised by the Court in the instant Order;

- PROVIDE documentation detailing the number of hours incurred by attorneys in litigating this action, supported by detailed time records, as well as hourly compensation to which those attorneys are reasonably entitled;

- PROVIDE documentation itemizing and supporting the reasonableness of litigation expenses for which Class Counsel seeks reimbursement; and

- BE PREPARED to address any questions the Court may have regarding attorneys' fees, expenses, and incentive awards at the Final Approval Hearing.

6. **Final Approval Hearing**: The Court sets a Final Approval Hearing on **Thursday, July 9, 2026**, at **10:00 AM** in Courtroom 4A, of the Edward J. Schwartz United States Courthouse, 221 W. Broadway, San Diego, CA 92101, to consider:

- Whether the proposed Class Settlement should be finally approved as fair, reasonable, and adequate;[6]

- Whether Class Counsel's requested attorneys' fees and expenses are reasonable;

---

[6] Considering the Claim Form and Objection Period deadlines are after briefing concludes, the Court expects Class Counsel to be prepared to provide a final accounting of (1) the number of Claim Forms received, (2) the number of Claim Forms rejected and for what reason, including if any were rejected solely for being untimely, and (3) the number of Objections received in total, including any that were untimely or did not comply with all the requirements detailed in the Settlement, and to provide a copy of all Objections received after briefing closed to be admitted as a part of the record at the Final Approval Hearing.

- Whether Plaintiffs' service awards are appropriate; and
- Whether the Settlement Administrator's expenses are reasonable.

**IT IS SO ORDERED.**

Dated:  February 18, 2026

Hon. Anthony J. Battaglia
United States District Judge