UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIKA FLORES and SARAH GARNER, individuals, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>THE COMPUTER MERCHANT, LTD.,<br><br>Defendant. | Case No.:  25-cv-00038-AJB-DEB<br><br>**ORDER GRANTING PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND MOTION FOR ATTORNEY FEES, COSTS, AND SERVICE AWARDS**<br><br>**(Doc. Nos. 35; 36)** |

Before the Court is an unopposed motion for final approval of class action settlement (Doc. No. 36) and an unopposed motion for award of attorneys' fees, costs, and service awards (Doc. No. 35), both filed by Plaintiffs Erika Flores and Sarah Garner ("Plaintiffs").[1] No objections have been filed or otherwise brought to the Court's attention. (*See* Doc. Nos. 36; 37.) For the reasons set forth below, the Court **GRANTS** Plaintiffs' motion for final approval and **GRANTS** Plaintiffs' motion for attorneys' fees, costs, and service awards.

---

[1]    As with the motion for preliminary approval, Defendant The Computer Merchant, LTD ("Defendant") failed to file a response to the instant motions. The Court admonishes Defendant for failing to comply with the Preliminary Approval Order and the Civil Local Rules but nonetheless deems the instant motions unopposed. *See* CivLR 7.1.f.3.c.

## I.    BACKGROUND

### A.    Factual Background

This putative class action centers around Plaintiffs' allegations that Defendant, an IT staffing company, failed to properly secure and safeguard the personal identifiable information of former and current employees. (Doc. No. 31-1 at 6; Doc. No. 1, Complaint ("Compl."), at ¶¶ 1–3.) Plaintiffs allege that, due to Defendant's failure, a third party gained unauthorized access to Defendant's computer network July 2024 (the "Data Incident"), compromising the personal information of approximately 34,127 individuals, which then was posted on the "dark web."[2] (Doc. No. 31-1 at 6; Compl. ¶¶ 4–5, 7.) Plaintiffs allege claims for negligence, invasion of privacy, breach of implied contract, breach of fiduciary duty, breach of confidence, and violations of the California Unfair Competition Law, the California Customer Records Act, and the California Consumer Privacy Act ("CCPA"). (*See generally* Compl.)

### B.    Procedural Background

Plaintiffs filed the complaint on January 8, 2025 (*see* Compl.), which Defendant answered (Doc. No. 10). The parties attended two early neutral evaluation ("ENE") conferences with Magistrate Judge Daniel E. Butcher on August 12 and August 28, 2025. (Doc. Nos. 20; 23.) At the end of the second ENE, Judge Butcher provided the parties with a mediator's proposal (Doc. No. 31-1 at 7), after which the parties reached a settlement in principle (*see id.*; *see also* Doc. No. 24). Over several months, the parties "worked cooperatively and diligently" to draft the Settlement and Release (Doc. No. 31-3, Settlement Agreement ("Settlement" or "Settlement Agreement")), which the parties and counsel executed in November 2025 (*id.* at 32–35).

On December 17, 2025, Plaintiffs filed a motion for preliminary approval of the class action settlement (Doc. No. 31), for which no opposition was filed or served on Plaintiffs'

---

[2]    Both Plaintiffs are former employees of Defendant whose personal information were taken in the Data Incident and posted on the dark web. (Compl. ¶¶ 15, 17.)

counsel (*see* Doc. No. 33). The Court granted Plaintiffs' motion and entered the order (the "Preliminary Approval Order"), which *inter alia* approved the Notice in form and content, appointed Simpluris as Settlement Administrator, set administrative dates, conditionally certified the class, and tentatively approved the Settlement. (Doc. No. 34.)

On January 7, 2026, pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. Section 1715, Simpluris informed the appropriate state and federal Attorneys General by mail about the Settlement on behalf of Defendant. (*See* Doc. No. 36-2, Declaration of Settlement Administrator Simpluris, Inc. ("Simpluris Decl."), at ¶ 5.) As an exhibit to its declaration, Simpluris submitted true and correct copies of the CAFA notice letter sent to the Attorneys General and the list of recipients. (Doc. No. 36-2 at 9–13 (CAFA notice).)

On February 25, 2026, Simpluris received a data file containing the names and valid mailing addresses of 34,131 Settlement Class Members. (*Id.* ¶ 9.) Because the initial data file included zero valid email addresses, Defendant provided two supplemental data files containing a combined total of 58,121 records, but only 8,000 email addresses could be matched to the original class list. (*Id.* ¶¶ 10–11.) On March 20, 2026, Simpluris sent the Postcard Notice to 28,677 Settlement Class Members. (*Id.* ¶ 13.) For the 5,097 Postcard Notices that were returned by U.S.P.S., Simpluris performed an advanced address search and were able to re-mail 4,240 to either a newfound address or to the forwarding address provided by U.S.P.S. (*Id.* ¶ 14.) Simpluris prepared and maintained both a Settlement Website including important dates, deadlines, and Settlement-related documents, and a Settlement-specific toll-free telephone number to field Settlement Class Member's inquiries about the Settlement. (*Id.* ¶¶ 18–19.) Simpluris also sent the Email Notice to 5,455 Settlement Class Members for whom a valid email address was available. (*Id.* ¶ 15.) Of those, 818 Settlement Class Members' Email Notices were undeliverable, so Simpluris sent Postcard Notice to those individuals. (*Id.*; Doc. No. 38, Supplemental Declaration of Settlement Administrator Simpluris, Inc. ("Suppl. Simpluris Decl."), at ¶ 13.) On April 7, 2026, Simpluris sent a Supplemental Email Notice to 9,683 Settlement Class Members for whom additional email addresses had subsequently been sent a Postcard Notice. (Simpluris

25-cv-00038-AJB-DEB

Decl. ¶ 16.) Of those, 8,297 Supplemental Email Notices were successfully delivered. (*Id.*) Based on all methods employed, 33,733 of the 34,131 Settlement Class Members, or 98.83% of the Settlement Class, successfully received Notice. (*Id.* ¶ 17.) Simpluris submitted true and correct copies of the Postcard Notice, the Email Notice, the longform Notice of Class Action Settlement, and Claim Form. (Doc. No. 36-2 at 14–16 (postcard notice), 17–19 (email notice), 20–30 (longform notice), 31–37 (claim form).) On June 10, 2026, Simpluris sent a Reminder Email Notice to 14,809 Settlement Class Members who had not yet filed a claim. (Suppl. Simpluris Decl. ¶ 15.) Finally, Simpluris received zero objections to the settlement and one valid request for exclusion.[3] (Suppl. Simpluris Decl. ¶¶ 26, 28.)

On May 18, 2026, Plaintiffs filed the instant motions for final approval and for award of attorneys' fees, costs, and service awards. (Doc. Nos. 35; 36.) In support of the final approval motion, Plaintiffs filed the declaration by the Settlement Administrator detailing Simpluris' progress to date with notice and claims administration (Simpluris Decl.), a declaration from each named plaintiff (Doc. Nos. 36-3, Decl. of Erika Flores ("Flores Decl."); 36-4, Decl. of Sarah Garner ("Garner Decl.")), a declaration from each co-class counsel (Doc. Nos. 36-5, Decl. of Joshua B. Swigart ("Swigart Approval Decl."); 36-7, Decl. of Ben Travis ("Travis Approval Decl.")), and an itemized accounting of the settlement administration costs (Doc. No. 36-6). In support of the fees motion, Plaintiffs proffered a second declaration by each co-class counsel (Doc. No. 35-2, Decl. of Joshua B. Swigart ("Swigart Fees Decl."); 35-7, Decl. of Ben Travis ("Travis Fees Decl.")), declarations from Plaintiffs,[4] and supporting documentation, including itemized billing

---

[3] In its initial declaration, Simpluris stated it had received one deficient request for exclusion, in response to which Simpluris sent a deficiency notice and deadline by which to cure. (*See* Simpluris Decl. ¶¶ 28, 30.) At the hearing on this motion, Class Counsel indicated that the deficient notice was not resubmitted but both parties agreed to honor the clear intent by deeming it valid. (*See* Doc. No. 41.)

[4] Plaintiffs' declarations attached to the fee motion (Doc. Nos. 35-9 (Flores); 35-10 (Garner)) are identical to those attached to the final approval motion. Accordingly, all citations are to the declarations attached to the final approval motion for ease and clarity.

records (Doc. Nos. 35-6 (Swigart's records); 35-8 (Travis's records)), itemized litigation costs records (Doc. No. 35-3), and litigation cost invoices (Doc. Nos. 35-4; 35-5). On July 7, 2026, Plaintiffs filed a supplement declaration from Simpluris. (Suppl. Simpluris Decl.) Then, in response to the Court's order preparing for the Final Approval Hearing, Plaintiffs filed a supplemental brief. (Doc. No. 40.) The Court held the Final Approval Hearing on July 9, 2026, at which counsel for both parties appeared. (Doc. No. 41.) To date, the Court has not been made aware of any objections. (*See* Doc. No. 36-2 ¶ 30.)

## II.   TERMS OF THE SETTLEMENT

The primary terms of the Settlement are provided below:

### A.   Settlement Benefits

Pursuant to the Settlement, Defendant is to transfer $610,000 to an Escrow Account to set up the Settlement Fund, which will be used to pay the monetary benefits to the Settlement Class as detailed below, Settlement Administration Costs, Service Award payments to each named Plaintiff, attorneys' fees, and litigation costs. (Settlement Agreement ¶¶ 61, 62, 65.) Separate from the Settlement Fund, Defendant will pay for a one-year subscription to CyEx Financial Shield. (*Id.* ¶¶ 24, 65.)

All Settlement Class Members were permitted to submit a Claim Form electing from the following benefits: (1) compensation for Extraordinary Out-of-Pocket Losses up to a total of $3,000 per Settlement Class Member; (2) compensation for Out-of-Pocket Losses up to a total of $500 per Settlement Class Member or an Alternative Cash Payment, estimated to be $40 per Claimant; (3) compensation at a rate of $20 per hour for up to five hours of Lost Time spent monitoring accounts or otherwise dealing with issues related to the Data Incident; and (4) for California Settlement Class Members, a CCPA Cash Payment, estimated to be $75. (*Id.* ¶ 69.) All Class Members will be provided with one year of CyEx Financial Shield without needing to submit a Claim Form, the enrollment codes for which will be provided in the individualized Notice to each Class Member. (*Id.* ¶ 70.)

///

5

25-cv-00038-AJB-DEB

If the total amount of Valid Claims for Extraordinary Out-of-Pocket Losses, Out-of-Pocket Losses, Lost Time, Alternative Cash Payments, and CCPA Cash Payments submitted by the Claim Form Deadline exceeds the amount of money available in the Settlement Fund, the amount of each valid Claim will be reduced proportionally. (*Id.* ¶ 71.) To the extent any funds remain in the Settlement Fund from uncashed checks ninety days after the Settlement Administrator completes the process for stopping payment on any checks that remain uncashed, all remaining funds will be distributed to a *cy pres* recipient to be approved by the Court. (*Id.* ¶ 103.)

To benefit from the Settlement, Settlement Class Members must complete and submit a Claim Form to the Settlement Administrator, postmarked or submitted electronically in accordance with the requirements for electronic submission of a Claim Form, on or before the Claim Form Deadline, which is fifteen days before the Final Approval Hearing. (*Id.* ¶ 17.)

**B.    Releases**

In exchange for the benefits described above, Plaintiffs and Class Members will "be forever barred from instituting, maintaining, or prosecuting, any and all liabilities, rights, claims, actions, causes of action, demands, damages, costs, attorneys' fees, losses and remedies, whether known or unknown, asserted or unasserted, existing or potential, suspected or unsuspected, liquidated or unliquidated, legal, statutory, or equitable, based on contract, tort or any other theory, whether on behalf of themselves or others, that result from, arise out of, are based upon, or relate to (1) the Data Incident; or (2) any of the alleged violations of laws or regulations cited in the Complaint." (*Id.* ¶ 104.) Plaintiffs Erika Flores and Sarah Garner are subject to an additional release that expressly waives Section 1542 of the California Civil Code. (*Id.* ¶ 107.)

**C.    Attorneys' Fees, Litigation Costs, and Service Awards**

The Settlement provides for Class Counsel seeking up to 33.33% in attorneys' fees, plus reimbursement of costs, and service awards for each named Plaintiff of an amount not to exceed $2,500. (*Id.* ¶¶ 100–01.) In the fees motion, Class Counsel seeks $152,500.00 in

attorneys' fees (equal to 25% of the Settlement Fund), reimbursement of $7,290.55 in litigation costs, and service awards to Plaintiffs in the amount of $2,500 each. (Doc. No. 35-1 at 6.) However, the Settlement is not contingent upon approval of these requests. (Settlement ¶ 102.)

## III.   MOTION FOR FINAL APPROVAL

Plaintiffs filed the instant motion for final approval seeking certification of the Settlement Class and the California Settlement Subclass, a determination that the Settlement is fair, adequate, and reasonable to the Class, and a finding that the Notice effectuated by the Settlement Administrator afforded Class Members adequate protection. (Doc. No. 36.) No opposition was filed by Defendant, and no objections have been filed or otherwise brought to the Court's attention. (*See* Docket *generally*.) For the reasons set forth below, the Court **GRANTS** Plaintiff's motion for final approval.

### A.   Legal Standard

A class action may only be settled with court approval. Fed. R. Civ. P. 23(e). "[I]n the context of a case in which the parties reach a settlement agreement prior to class certification, courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, 895 F.3d 597, 606 (9th Cir. 2018) (quoting *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003)); *see also Saucillo v. Peck*, 25 F.4th 1118, 1130 (9th Cir. 2022) (quoting *Roes, 1–2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1048 (9th Cir. 2019) ("[W]here the parties negotiate a settlement agreement before the class has been certified, settlement approval requires a higher standard of fairness and a more probing inquiry than may normally be required under Rule 23(e).") (internal punctuation omitted).

### B.   Class Certification

Before granting final approval of a class action settlement agreement, the Court must first determine whether the proposed class can be certified. *See* Fed. R. Civ. P. 23(e)(1)(B). "When, as here, the parties have entered into a settlement agreement before the district court certifies the class, reviewing courts "must pay undiluted, even heightened, attention

to class certification requirements." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003) (quoting *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 620 (1997)).

In the present case, the Court scrutinized the proposed Class and Subclass pursuant to Rule 23(a) and 23(b)(3) before granting Plaintiffs' motion for preliminary approval and conditionally certifying the class for purposes of settlement. (Doc. No. 34 at 6–15.) Although the motion was light on analysis, the Court noted no concerns at the time, no objections have been filed in response, and no circumstances have changed in the interim. In fact, the motion for final approval provides more fulsome analysis, further bolstering the propriety of certification. Accordingly, the Court reaffirms and incorporates its prior analysis under Rules 23(a) and (b)(3) as set forth in its Preliminary Approval Order (*see id.*) and certifies the following classes for purpose of settlement:

1.    "Settlement Class": "[A]ll persons in the United States whose Private Information was potentially compromised as a result of the Data Incident and who were sent notice of the Data Incident." (Settlement ¶ 59.)

2.    "California Settlement Subclass": "[T]hose individuals who are California Settlement Class Members and are eligible to receive a CCPA Cash Payment under the Settlement." (*Id.* ¶ 12.)

## C.    Adequacy of Notice

Next, the Court must determine whether the class members received adequate notice. *See* Fed. R. Civ. P. 23(e)(1) ("The court must direct notice in a reasonable manner to all class members who would be bound by the proposal[.]"). "Adequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1025 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011).

As mentioned *supra* § I, the Court approved the proposed Class Notice Packet in plan, form, and content. (Doc. No. 34 at 30–31.) Plaintiffs filed a declaration by Simpluris, detailing the actions taken by the Settlement Administrator to provide notice in accordance with the Preliminary Approval Order (*see* Simpluris Decl. ¶¶ 7–19) and a supplemental

declaration on July 7, 2026, to provide the Court an updated accounting (*see generally* Suppl. Simpluris Decl.). Pursuant to the notice plan, the Settlement Administrator successfully directed notice to 33,733 Settlement Class Members or 98.83% of the Settlement Class. (Suppl. Simpluris Decl. ¶ 15; Doc. No. 36-1 at 32.) Between March 20, 2026, and July 6, 2026 the Settlement Website received 2,620 unique visitors with 7,119 page views and the Settlement-specific toll-free telephone number received 47 phone calls. (Suppl. Simpluris Decl. ¶¶ 16–17.) Simpluris has received 591 claim form submissions consisting of 13 claims for extraordinary losses, 9 claims for out-of-pocket losses, 533 claims for the alternative cash payment benefit, 344 claims for lost time, and 41 claims for the CCPA cash payment. (*Id.* ¶¶ 18–23.) The 533 claims reflect a 1.5% response rate to the notice.

Having reviewed the declaration, the Court finds that the Settlement Administrator duly effectuated the court-approved Notice and that Class Members received adequate notice of the Settlement. *See, e.g.*, *Carter v. McDonald's Restaurants*, No. EDCV1501531MWFJCX, 2017 WL 5634300, at *3 (C.D. Cal. Mar. 15, 2017) (finding a notice delivery rate of 94.5% satisfactory). *Hod v. Medtronic MiniMed, Inc.*, No. 2:23-CV-07154-JLS-PVC, 2025 WL 2934516, at *3 (C.D. Cal. Sept. 18, 2025) (accepting a direct settlement notice rate of 91.72% in approving the settlement of a data security class action).

### D.     Fairness of the Settlement

Next, the Court must determine whether the proposed settlement and notice are "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(1), (2). "Under this standard, district courts can neither rubberstamp the settlement nor unduly meddle in the parties' affairs." *In re Cal. Pizza Kitchen Data Breach Litig.*, 129 F.4th 667, 674 (9th Cir. 2025).

Traditionally, courts in this circuit assess the fairness, reasonableness, and adequacy of a proposed Rule 23 class settlement by balancing the following factors:

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience

25-cv-00038-AJB-DEB

and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement.

*Kim v. Allison*, 8 F.4th 1170, 1178 (9th Cir. 2021). "The district court's approval order must show not only that 'it has explored [these] factors comprehensively,' but also that the settlement is 'not[] the product of collusion among the negotiating parties.'" *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011) (quoting *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000), *as amended* (June 19, 2000)).

In 2018, Rule 23(e)(2) was amended to require courts to consider whether:

(A)    the class representatives and class counsel have adequately represented the class;
(B)    the proposal was negotiated at arm's length;
(C)    the relief provided for the class is adequate, taking into account:
    (i)    the costs, risks, and delay of trial and appeal;
    (ii)   the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
    (iii)  the terms of any proposed award of attorney's fees, including timing of payment; and
    (iv)   any agreement required to be identified under Rule 23(e)(3); and
(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

### 1.    Rule 23(e)(2) Factors

In its Preliminary Approval Order, the Court found that the Rule 23(e)(2) factors preliminarily weighed in favor of approving the Settlement. (*See* Doc. No. 34 at 16–25.) However, the Court also expressed concern about insufficient justification provided for the requested amount of attorneys' fees, Plaintiffs' requested service awards, and the equity of the different share options. (*Id.* at 21, 22, 25.) Considering that no pertinent facts the Court relied upon changed, and that the Settlement is not dependent on the Court approving the requested fees and incentive award (*see* Settlement ¶ 102), the Court reaffirms and reincorporates its analysis finding the adequacy of relief, adequacy of representation, and

the lack of collusion support the fairness, reasonableness, and adequacy of the Settlement.[5]

Although not identified as an impediment to approval, the Court noted that the motion for preliminary approval estimated individual monetary recovery at $17.87 per Class Member while the Notice estimated the Alternative Cash Payment to be $40 and the CCPA Cash Payment to be $75. (Doc. No. 34 at 17 n.4.) The Court directed the parties to be prepared to address the discrepancy at the Final Approval Hearing. (*Id.*) In the motion for final approval, Plaintiffs explain that $17.87 was derived from dividing the gross settlement ($610,000) by the approximate 34,127 Settlement Class Members to provide a comparison to other settlements. (Doc. No. 36-1 at 26.) However, Plaintiffs assert that, considering "claims rates in similar data security class actions tend to be 3-10% of the class," the $40 and $75 values are more realistic conservative values based on those claims rates (the estimated $40 and $75 amounts may even end up being higher, depending on the final claims rate)." (*Id.*) Finally, Plaintiffs state that inclusion of the "more realistic $40 and $75 values in the Notice [was] an effort to encourage more Settlement Class Members to participate than if they would be provided with lower numbers that is based on all members of the Settlement Class participating." (*Id.*) The Court finds that Plaintiffs' explanation dispels any concerns raised in the Preliminary Approval Order regarding the discrepancy in numbers and further supports the adequacy of relief.

With regard to the equitable treatment factor, the Preliminary Approval Order noted "the Settlement expressly contemplates providing Class Members with a share based either (1) on the amount of losses actually incurred or (2) absent documentation of actual losses, a pro rata calculation," but Plaintiffs provided no discussion of whether "the difference in potential recovery takes appropriate account of Class Members' individual circumstances." (Doc. No. 34 at 25.) The Court then directed the parties to explicitly address and justify the equity of the different share options. (*Id.*) To address the Court's concern, Plaintiffs state

---

[5] The Court will analyze the requested fees and incentive award when addressing motion for award of attorneys' fees, costs, and service award (Doc. No. 35). *See infra* § IV.

that the "differing forms of relief," namely documented losses compared to the Alternative Cash Payment, "appropriately account for the varying circumstances and levels of harm experienced by Settlement Class Members." (Doc. No. 36-1 at 28.) Specifically, Plaintiffs argue "[i]t is appropriate for those who can demonstrate losses to receive higher payments." (*Id.*) Moreover, in the supplemental brief, Plaintiffs explain how the maximums for documented losses were set based on "arm's-length negotiation between the Parties [and were] informed by the types of benefits commonly offered and approved in comparable data breach class action settlements[.]" (Doc. No. 40 at 7.) Based on the motion and the supplemental brief, the Court is satisfied that the difference compensation categories take appropriate account of the difference in the individual circumstances of the Settlement Class Members.

Accordingly, the Court finds that all Rule 23(e)(2) factors weigh in favor of approval.

### 2. Additional Ninth Circuit Factors

As the amended Rule 23(e)(2) factors were not intended to replace the factors developed by circuits, the Court now turns to analyze the remaining factors traditionally considered by this Circuit. *See* Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment.

### i. Experience and Views of Counsel

In its Preliminary Approval Order, the Court found the experience and views of counsel weighed in favor of approval. (Doc. No. 34 at 26.) As no changes to Class Counsel have occurred, no relevant facts have changed, and no objections to Class Counsel have been brought to the Court, the Court reaffirms and incorporates its analysis on this factor and finds this factor weighs in favor of settlement approval.

### ii. Presence of a Government Actor

There is no government actor party to this action. However, CAFA requires that, "[n]ot later than 10 days after a proposed settlement of a class action is filed in court, each defendant that is participating in the proposed settlement shall serve upon the appropriate

25-cv-00038-AJB-DEB

State official of each State in which a class member resides and the appropriate Federal official, a notice of the proposed settlement[.]" 28 U.S.C. § 1715(b). "Although CAFA does not create an affirmative duty for either state or federal officials to take any action in response to a class action settlement, CAFA presumes that, once put on notice, state or federal officials will raise any concerns that they may have during the normal course of the class action settlement procedures." *In re LinkedIn*, 309 F.R.D. at 588–89.

Simpluris served CAFA Notices to the appropriate state and federal Attorneys General by January 7, 2026 (Simpluris Decl. ¶ 5), more than 10 days after the motion for preliminary approval was filed (*see* Doc. No. 31). Simpluris explains that the delay was due to "the winter holidays and a misunderstanding." (Simpluris Decl. ¶ 5.) Although untimely under 28 U.S.C. § 1715(b), the late notice is not fatal to final approval. *See Adoma v. Univ. of Phoenix, Inc.*, 913 F. Supp. 2d 964, 973 (E.D. Cal. 2012) ("[N]umerous courts [have found] that late mailing of notices to state and federal officials under CAFA is not fatal to approval of settlements.") (collecting cases). Rather, courts have found more critical whether the appropriate state and federal officials were provided at least 90 days to assess the settlement and respond, if desired. *See* 28 U.S.C. § 1715(d); *see also Cavazos v. Salas Concrete Inc.*, No. 119CV00062DADEPG, 2022 WL 1198367, at *1 n.1 (E.D. Cal. Apr. 22, 2022) (collecting cases).

The Court finds that this factor weighs in favor of settlement because the delay of minimal, more than 90 days elapsed to provide government officials sufficient time to object or otherwise respond, and no responses of any kind were received from government officials (*id.* ¶ 6). *See, e.g.*, *Rose v. Bank of Am. Corp.*, No. 5:11-CV-02390-EJD, 2014 WL 4273358, at *5 (N.D. Cal. Aug. 29, 2014) ("Although CAFA notice was sent to various governmental entities, none sought to participate in the settlement proceedings by objection or comment. Thus, this factor weighs in favor of approval.").

### iii.    Reaction of Class Members

"It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement

action are favorable to the class members." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) (quoting *Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004)).

Here, no objections to the Settlement by Class Members have been received and only one Class Member requested to be excluded. (Simpluris Decl. ¶¶ 28, 30; Suppl. Simpluris Decl. ¶¶ 26, 28; Doc. No. 36-1 at 30.) The absence of objections and requests for exclusion weigh in favor of settlement. *See, e.g.*, *Nat'l Rural Telecomm. Coop.*, 221 F.R.D. at 529 ("The complete absence of Class Member objections to the Proposed Settlement speaks volumes with respect to the overwhelming degree of support for the Proposed Settlement among the Class Members. That unanimous, positive reaction to the Proposed Settlement is compelling evidence that the Proposed Settlement is fair, just, reasonable, and adequate."); *Carter v. Vivendi Ticketing US LLC*, No. SACV2201981CJCDFMX, 2023 WL 8153712, at *9 (C.D. Cal. Oct. 30, 2023) (finding "[t]he fact that there was only one request for exclusion and one objection also indicate[d] strong support for the Settlement [of the data breach action] and weighs in favor of granting final approval") (collecting cases).

### 3. Conclusion

Having analyzed the Rule 23(e)(2) factors and the Ninth Circuit's factors, and finding them weigh in favor of approval, the Court finds the Settlement fundamentally fair, adequate, and reasonable. *See Officers for Just. v. Civ. Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982) ("[I]t must not be overlooked that voluntary conciliation and settlement are the preferred means of dispute resolution[,] especially . . . in complex class action litigation[.]").

### E. *Cy Pres* Recipient

"[C]y *pres* doctrine allows a court to distribute unclaimed or non-distributable portions of a class action settlement fund to the 'next best' class of beneficiaries." *Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012) (quoting *Nachshin v. AOL, LLC*, 663 F.3d 1034, 1036 (9th Cir. 2011)). "[A] district court should not approve a *cy pres*

25-cv-00038-AJB-DEB

distribution unless it bears a substantial nexus to the interests of the class members" meaning that it "must account for the nature of the plaintiffs' lawsuit, the objectives of the underlying statutes, and the interests of the silent class members." *Id.* at 821(cleaned up).

The Settlement Agreement contemplates the possibility of identifying a *cy pres* recipient through subsequent Court involvement, if necessary. Specifically, "[i]f there is any balance remaining in the Settlement Fund 90 days after the Settlement Administrator completes the process for stopping payment on any checks that remain uncashed, the Parties will return to the Court seeking direction as to the disposition of these funds, including the selection of a *cy pres* recipient, which shall be a 501(c)(3) selected by the Parties (subject to Court approval)." (Settlement ¶ 73.)

At the Court's direction (Doc. No. 34 at 27–28), the parties propose the International Association of Privacy Professionals ("IAPP") Westin Scholarship Fund be designated the *cy pres* recipient. (Doc. No. 36-1 at 32–33.) "IAPP is a leading, policy neutral not-for-profit association and gathering place for professionals who work at the intersections of data and technology." (*Id.* at 33.) The parties argue IAPP's Westin Scholarship Fund is an appropriate *cy pres* recipient because "there is a sufficient nexus between IAPP's mission and the objectives of this litigation[.]" (*Id.*) Specifically, "the Westin Fellowship program provides opportunities for early-career professionals to spend a year with the IAPP, conducting research in the fields of privacy, artificial intelligence governance and digital responsibility, engaging with global leaders across these disciplines." (*Id.*)

The Court finds the IAPP Westin Scholarship Fund to bear a substantial nexus to the interest of the class in having employers properly safeguard personal information through funding early-career professionals' research into such issues as digital responsibility and privacy. *See, e.g.*, *Hod*, 2025 WL 2934516, at *9 (finding IAPP "a proper *cy pres* recipient in th[e] context [of a data security action involving personally identifiable information and protected health information] given its mission to promote and improve the professions of privacy and digital responsibility").

///

25-cv-00038-AJB-DEB

**F.      Settlement Administration Costs**

Per the terms of the parties' Settlement and the Preliminary Approval Order, Simpluris was approved as the Settlement Administrator. (Settlement ¶ 76; Doc. No. 34 at 30, 32.) Initially estimated to be $30,069.00 (Doc. Nos. 31-1 at 8; 34 at 30), the final requested amount is $48,821.12, "mostly due to the need to send more Postcard Notices than initially expected and Simpluris' efforts to identify additional email addresses, to ensure that even those who received the Postcard Notice may also be provided with the Email Notice," and the Reminder Email Notice. (*Id.*; Simpluris Decl. ¶¶ 9–16 (detailed additional steps required due to the data files provided); Suppl. Simpluris Decl. ¶ 29.) In support of the final number, Plaintiffs filed a supplemental brief providing an updated itemized invoice from Simpluris and extensive case law in support of the reasonableness of the costs under the circumstances. (Doc. No. 40.) Based on all supporting documentation, the Court finds the settlement administration costs of $48,821.12 to be fair and reasonably incurred for the benefit of the Class.

**G.      Conclusion**

In conclusion, having found the effectuated Notice adequate, the Settlement fair, adequate and reasonable, the *cy pres* recipient appropriate, and the Settlement Administrator's costs reasonable, the Court **GRANTS** Plaintiffs' motion for final approval.

**IV.      MOTION FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARD**

Plaintiffs filed the instant motion seeking an award of $152,500.00 (25% of the common fund) for attorneys' fees, reimbursement of $7,290.55 for litigation costs incurred, and a service award of $2,500 for each named Plaintiff, all to be paid from the Settlement Amount. (Doc. No. 35.) Defendant filed no opposition, and no Class Members have objected. For the reasons set forth below, the Court **GRANTS** Plaintiffs' motion for attorneys' fees, litigation costs, and service awards.

**A.      Legal Standard**

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P.

25-cv-00038-AJB-DEB

23(h). "Because the relationship between class counsel and class members turns adversarial at the fee-setting stage, district courts assume a fiduciary role that requires close scrutiny of class counsel's requests for fees and expenses from the common fund." *In re Optical Disk Drive Prod. Antitrust Litig.*, 959 F.3d 922, 930 (9th Cir. 2020).

## B.    Attorneys' Fees

First, Class Counsel—Swigart Law Group, APC, and Ben Travis Law, APC—seek a combined $152,500.00 in attorneys' fees, which Plaintiffs argue is reasonable under either the percentage-of-fund method or the lodestar method. (Doc. No. 35-1 at 11–15.)

### 1.    Legal Standard

"In a common fund case, such as this, the district court has the discretion to choose between either the lodestar or the percentage-of-fund methods when calculating fees." *Stanger v. China Elec. Motor, Inc.*, 812 F.3d 734, 738 (9th Cir. 2016).

"Under the percentage-of-fund method, the district court may award plaintiffs' attorneys a percentage of the common fund, so long as that percentage represents a reasonable fee." *Stanger*, 812 F.3d at 738 (citing *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000)). "The benchmark percentage is 25%, but, similar to the lodestar, the benchmark percentage 'can be adjusted upward or downward, depending on the circumstances.'" *In re Apple Inc. Device Performance Litig.*, 50 F.4th 769, 784 (9th Cir. 2022) (quoting *Kim*, 8 F.4th at 1181). "[I]n assessing a request for attorneys' fees that was calculated using the percentage-of-recovery method," courts in the Ninth Circuit may consider "the extent to which class counsel 'achieved exceptional results for the class,' whether the case was risky for class counsel, whether counsel's performance 'generated benefits beyond the cash settlement fund,' the market rate for the particular field of law (in some circumstances), the burdens class counsel experienced while litigating the case (e.g., cost, duration, foregoing other work), and whether the case was handled on a contingency basis." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 954–55 (9th Cir. 2015) (quoting *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048–50 (9th Cir. 2002)).

///

25-cv-00038-AJB-DEB

"Whichever method is chosen, courts often employ the other method as a cross-check that the award is reasonable." *In re Apple*, 50 F.4th at 784. "Reasonableness is the goal, and mechanical or formulaic application of either method, where it yields an unreasonable result, can be an abuse of discretion." *Stanger*, 812 F.3d at 739 (citation omitted)).

### 2. Percentage-of-Fund Analysis

Considering the circumstances of this case under the percentage-of-fund analysis, the Court finds Counsel's requested fee reasonable. First, the amount sought—$152,500.00—represents the benchmark percentage for this circuit. *See In re Apple*, 50 F.4th at 784. Although not dispositive, it lends itself toward a finding of reasonableness. Second, Class Counsel arguably "achieved exceptional results" because the average monetary value for each Settlement Class Member exceeding the average individual recovery in settlements of similar cases. *In re Omnivision*, 559 F. Supp. 2d at 1046 ("The overall result and benefit to the class from the litigation is the most critical factor in granting a fee award."). Additionally, the Settlement provides a benefit beyond the cash recovery because all Settlement Class Members also receive one year of credit monitoring through CyEx Financial Shield. (Doc. No. 35-1 at 11–12.) Third, litigating data breach cases is costly, time consuming, and risky. (Doc. No. 35-1 at 12–13.) Specifically, Plaintiffs point to how resolution of the factual disputes regarding reasonableness of Defendant's security protocols "would require complex, expensive, and unpredictable technical discovery and expert evidence regarding Defendant's cybersecurity measures." (*Id.* at 13.) Plaintiffs anticipate that, had the case not settled, "there would have been extensive motion practice on the pleadings," with "an appreciable risk that Defendant may succeed[.]" (*Id.* at 12.) Fourth, adding an additional layer of risk, "Class Counsel prosecuted this matter on a purely contingent basis while agreeing to advance all necessary expenses and knowing that Class Counsel would only receive a fee if there was a recovery." (*Id.* at 14–15.) Considering all these factors, the Court finds $152,500.00 a reasonable award under the percentage-of-fund analysis.

25-cv-00038-AJB-DEB

### 3. Lodestar Cross-Check

"Calculation of the lodestar, which measures the lawyers' investment of time in the litigation, provides a check on the reasonableness of the percentage award." *Vizcaino*, 290 F.3d at 1050. "The lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *In re Bluetooth*, 654 F.3d at 941 (citing *Staton v. Boeing Co.*, 327 F.3d 938, 963–64 (9th Cir. 2003)).

Joshua Swigart, principal of Swigart Law Group, expended 115.8 hours at a rate of $1,250, resulting in a lodestar of $144,750. (Swigart Fee Decl. ¶ 8.) Katherine Tuohy, an associate attorney at Swigart Law Group, expended 51.4 hours at a rate of $459, resulting in a lodestar of $25,443.00. (Swigart Fee Decl. ¶ 10.) Ben Travis of Ben Travis Law, APC, expended "at least 58.4 hours" at an hourly rate of $1,000, resulting in a lodestar of $58,400. (Travis Fee Decl. ¶¶ 14, 16–17.) Travis further avers that his "lodestar does not include completing work on the class action administration, dealing with any objections and/or opt outs, and preparing for, traveling to and attending the final approval hearing." (*Id.* ¶ 17.) Thus, using the lodestar cross-check, "the 25% fee requested by Class Counsel currently reflects a negative multiplier of approximately 0.67[.]" (Doc. No. 35-1 at 16; *see also* Swigart Fee Decl. ¶ 12.)

Although Swigart's rate is on the high end, "courts in this District have awarded hourly rates for work performed in civil cases by attorneys with significant experience anywhere in range of $550 per hour to more than $1000 per hour." *Tanner v. Plavan Com. Fueling, Inc.*, No. 3:24-CV-1341-BTM-JLB, 2025 WL 2231304, at *6 (S.D. Cal. Aug. 4, 2025) (approving an hourly rate of $800 as reasonable in a data breach class action). Based on review of Class Counsel's experience, the rates are reasonable for attorneys litigating complex data breach actions in this district. Additionally, reviewing the billing records provided, the hours expended are reasonable. Together, the negative multiplier supports the reasonableness of 25% award under the percentage-of-the-fund method.

### 4. Conclusion

The Court finds Plaintiffs' request for $152,500.00 (25% of the common fund) worth of attorneys' fees to be reasonable under the circumstances, given the records and declarations provided by Class Counsel, and considering the complex nature of a class action lawsuit, the favorable result obtained both monetary and otherwise, the lack of objections, and lodestar cross-check. Accordingly, the Court **GRANTS** the instant motion with regard to the requested attorneys' fees.

### B. Expenses

Class Counsel seek reimbursement of $7,290.55 in actually incurred litigation costs. (Doc. No. 35-1 at 17.) In support of this request, Swigart and Travis both proffer an list of itemized costs along with an invoice detailing the purpose for which the expert was retained and an invoice supporting the mailing item line. (Travis Decl. ¶ 18 (totaling $166.89); Doc. Nos. 35-3 (totaling $7,123.66); 35-4 (mailer invoice); 35-5 (expert retainer invoice).)

"Attorneys may recover their reasonable expenses that would typically be billed to paying clients in non-contingency matters." *In re Omnivision*, 559 F. Supp. 2d at 1048 (citing *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994)). "In assessing the reasonableness of the reimbursement request, the Court is 'reminded that it is generally not the practice of an attorney to bill a client for every expense incurred in connection with the litigation in question,' and 'the attorney is expected to absorb some of the cost of doing business as an attorney.'" *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1177 (S.D. Cal. 2007) (quoting *In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1996)).

Here, Counsel seeks reimbursement of: $1,190.14 for legal research, incurred through use of Westlaw ($1,029.60) and Lexis ($160.54); $5,000.00 as a retainer for an expert; $695.41 in mailing, copies, and service of process costs; and $405.00 in filing fees. (*See* Doc. No. 35-3; Travis Decl. ¶ 18.) Having reviewed the itemized billing records and considering the circumstances of the instant action, the Court finds these costs were reasonably incurred in litigating this action for the benefit of the Settlement Class and are

all commonly reimbursed in similar amounts. *See, e.g.*, *Heid v. CyraCom Int'l, Inc.*, No. 22-CV-01445-MMA-KSC, 2024 WL 4008650, at *13 (S.D. Cal. Aug. 30, 2024) (finding reasonable $31,110.36 in fees related to mediation, legal research, service of process, filing, travel, courier and copying); *Scott v. Blackstone Consulting, Inc.*, No. 21-CV-1470-MMA-KSC, 2024 WL 271439, at *11 (S.D. Cal. Jan. 24, 2024) (awarding $15,204.08 filing fees, service fees, photocopying costs, postage, travel, discovery and research related expenses, mediation fees and related travel, and other litigation related expenses); *Tanner*, 2025 WL 2231304, at *6 (approving $6,603.75 in a data breach class action that settled prior to the filing of an answer). Accordingly, the Court **GRANTS** Class Counsel's request for $7,290.55 to reimburse litigation costs.

### C.   Class Representative Service Award

Finally, Plaintiffs seek an award $2,500 each for service as Class Representatives. (Doc. No. 35-1 at 17–18.)

Incentive awards are designed to "compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009). Although "[i]ncentive awards are fairly typical in class action cases," they are discretionary. *Staton*, 327 F.3d at 958. In deciding whether to approve an incentive award, courts consider factors including "the number of named plaintiffs receiving incentive payments, the proportion of the payments relative to the settlement amount, and the size of each payment." *In re Online DVD-Rental*, 779 F.3d at 947 (quoting *Staton*, 327 F.3d at 977); *see also Ridgeway v. Wal-Mart Stores Inc.*, 269 F. Supp. 3d 975, 1002 (N.D. Cal. 2017) (listing factors including risk to the representative, notoriety and personal difficulties encountered, amount of time and effort spent, duration of litigation, and personal benefit).

Here, Garner and Flores each seek $2,500 as an incentive award, and each proffers a declaration to support her individual request. (Doc. No. 35-1 at 17–18; *see also* Garner Decl.; Flores Decl.) Both Plaintiffs aver that to having "spent approximately 30 hours on

25-cv-00038-AJB-DEB

this case, including but not limited to communicating with counsel, providing information and documents, and reviewing case and settlement materials." (Garner Decl. ¶ 7; Flores Decl. ¶ 7.) Plaintiffs argue that they have "actively participated in the prosecution of this action[,] acted in the interests of the proposed class, including attending the initial ENE," "put their names and reputations on the line for the sake of the class," and "adequately represented the class members throughout this litigation." (Doc. No. 35-1 at 18.)

Plaintiffs do not assert any risk, notoriety, or personal difficulties encountered as an impact of their representation. However, Plaintiffs have provided information and made themselves available to Counsel for nearly two years, expending at least 30 hours each. Moreover, while the $2,500 service award is approximately 147 times larger than the conservatively estimated $17.87 individual recovery, the Ninth Circuit has approved incentive awards "roughly 417 times larger" than the individual recoveries on the basis that "the number of class representatives, the average incentive award amount, and the proportion of the total settlement that is spent on incentive awards" is of more importance. *See In re Online DVD-Rental*, 779 F.3d at 947. Here, the requests total $5,000 together, are only for two representatives, and constitute only 0.8% of the total common fund. (Doc. No. 35-1 at 18.) Accordingly, the Court **GRANTS** Plaintiffs' request for service awards.

### D.    Conclusion

Based on the foregoing, the Court **GRANTS** Plaintiffs' motion and **AWARDS** $152,500.00 of the common fund for attorneys' fees, $7,290.55 in litigation expenses, and $2,500 each to Flores and Garner as service awards for serving as Class Representatives.

## V.    CONCLUSION

Based on the foregoing, the Court **GRANTS** Plaintiffs' motion for final approval and **GRANTS** Plaintiffs' motion for attorneys' fees, litigation costs, and service awards. The Court **APPROVES** the Settlement, and all of its terms, and **DIRECTS** the parties to effectuate the Settlement Agreement according to its terms, including *inter alia* that:

1.    Simpluris be paid $48,821.12 for its services rendered as Settlement Administrator;

2.      Swigart Law Group, APC, and Ben Travis Law, APC be paid a combined $152,500.00 in attorneys' fees and $7,290.55 in litigation costs for their work as Class Counsel;

3.      Plaintiff Erika Flores be awarded $2,500 for her service as Class Representative; and

4.      Plaintiff Sarah Garner be awarded $2,500 for her service as Class Representative.

The Court further **ORDERS**:

1.      **No later than <u>November 5, 2026</u>**, the parties are to file a Joint Status Report, identifying:

> i.      The number of Claim Forms submitted;
>
> ii.     The number of Claim Forms approved in whole and in part;
>
> iii.    The average, median, minimum, and maximum recovery per claimant;
>
> iv.     The number of checks not cashed and their total value;
>
> v.      The number of Class Members who activated their subscription to CyEx Financial Shield;
>
> v.      The amount of the settlement funds distributed at that point;
>
> vi.     The amount to be distributed to the *cy pres* recipient; and
>
> vii.    Any outstanding issues that need resolution prior to dismissal.

2.      An in-person, counsel-only Settlement Disposition Conference is **SET** for **<u>November 12, 2026</u>**, at **<u>10:00 AM</u>** in Courtroom 4A of the Edward J. Schwartz United States Courthouse, 221 W. Broadway, San Diego, CA 92101.

**IT IS SO ORDERED.**

Dated:  July 13, 2026

Hon. Anthony J. Battaglia
United States District Judge

23

25-cv-00038-AJB-DEB